## THE NANCY DELL. (Two Cases.)

*(District Court, N. D. Illinois.* November 6, 1882.)

1. VESSELS—OWNERSHIP—EVIDENCE OF.

The certificate of enrollment of a vessel is of itself not even *prima facie* evidence of ownership.

2. SAME—INNOCENT PURCHASER—DILIGENCE.

Where a party purchases an interest in a vessel merely on the representation of the seller that he was the owner of such interest, and knowing at the time that such seller was not in possession nor exercising acts of ownership over the vessel, and neglected to ascertain from known part owners of the vessel whether the seller's claim as part owner was *bona fide,* he is not an innocent purchaser without notice, nor can he claim that he exercised even ordinary diligence in the matter of said purchase.

In Admiralty.

These cases having been referred by said court to LAWRENCE PROUD-FOOT, Esq., United States commissioner, to take proofs, examine into and report his conclusions as to the law and the facts therein, he reported in substance as follows:

Amelia Beckley and Theodore S. Consaul, each claiming a one-quarter ownership in said schooner, becoming dissatisfied with the manner in which she was being managed, file a petition for a sale and a partition, alleging a one-quarter ownership in said Amelia Beckley, and that said Consaul is the owner of another quarter, and that one Barney Van Patten is the owner of the remaining half. Under said petition an order of sale is entered, and under a sale by the United States marshal the sum of $2,100 is realized, which sum is deposited in court. Nancy L. Van Patten, the wife of Barney, files her petition against the proceeds of such sale, alleging that said schooner is indebted to her in the sum of $2,300, for money loaned, with interest at 8 per cent., which sum is secured to be paid to her

by a mortgage, executed by said Barney Van Patten, conveying to her a three-quarter interest in said schooner as security for the payment of said principal sum and interest.

There is no question raised as to Mrs. Beckley being the owner of a one-quarter interest, but Barney Van Patten claims that he is the owner of the remaining three-quarters, covered by the mortgage executed by him in favor of his wife, and that Consaul has no interest in said schooner whatever, and is therefore not entitled to be paid one-quarter of the proceeds of her sale.

The evidence shows that said schooner was duly enrolled and licensed, and a certificate of such enrollment issued by the collector of customs at Grand Haven, Michigan, April 8, 1879, setting forth that one Edward Anderson had sworn that he owned one-quarter, and that Barney Van Patten owned three-quarters of said schooner, and that he (Anderson) was then master.

During the summer of 1879 Van Patten sold a one-quarter interest to Amelia Beckley, and a new certificate of enrollment was issued at Grand Haven, November 19, 1879, upon the oath of Edward Anderson that he owned one-quarter, Barney Van Patten one-half, and Amelia Beckley one-quarter, and that Charles M. Causland was then master. Subsequently, on March 22, 1880, upon the oath of Mrs. Beckley that she owned one-quarter, Barney Van Patten one-half, and Edward Anderson one-quarter, and that J. G. Beckley was then master, another certificate of enrollment was issued at Grand Haven. On the tenth of May, 1880, upon the oath of Mrs. Beckley that she owned one-quarter, Barney Van Patten one-half, and T. S. Consaul one-quarter, and that J. G. Beckley was then master, a certificate of enrollment was issued at the port of Milwaukee. On the eighth of June, 1881, upon the oath of Barney Van Patten that he owned one-half, Amelia Beckley one-quarter, and that T. S. Consaul, according to the record, owned one-quarter, which one-quarter he (Van Patten) claims to own, and that Peter Peterson was then master, another certificate of enrollment was issued at Grand Haven.

The evidence of Mrs. Beckley convinces me that she knew nothing of her own knowledge in regard to any ownership of Anderson, but made the oath for enrollment from the previous enrollment made by Anderson, in which he alleged that he was a one-fourth owner. On the twenty-third of March, 1880, a bill of sale was made by Edward Anderson of one-quarter interest in said vessel to Theodore S. Consaul for the sum of $650. Consaul claims that he bought said quarter in good faith, and that before buying it he telegraphed to the custom-

house at Grand Haven to ascertain who were the enrolled owners of the said schooner at that time. An answer by telegram, signed by Deputy Collector Stephenson, was received by Consaul, as follows: "Edward Anderson fourth, Barney Van Patten half, and Amelia Beckley fourth. No incumbrances." On the strength of this telegram, and without making any inquiries of the other owners, Consaul bought for the nominal sum of $650. The evidence shows that the actual amount paid was $400, $150 of which was paid to Mr. Anderson at the time, and $250 were deposited in bank to secure Consaul against any claims that might be brought against the vessel, and subsequently this $250 was paid over to Anderson. During the time it lay in the bank, however, the evidence shows that Barney Van Patten told Mr. Consaul that Anderson had no title to sell; that he never had owned an interest in the boat, and advised him to be careful in dealing with him.

Barney Van Patten testifies that Anderson never had any interest whatever in the schooner; that he was employed by him to build her, and that all the money that went into her was advanced by him, (Barney Van Patten,) and that Anderson was paid for his services by days' labor, etc.; and that he employed him as master, and that as such master he took advantage of him (Van Patten) and took out first enrollment papers, representing that he (Anderson) was one-quarter owner of her, when in fact he had no ownership whatever, and that it was a fraud upon him, (Van Patten.)

Anderson is not put upon the stand to contradict this statement, and the other evidence introduced in the case convinces me that Van Patten's statement is correct, and that Anderson never did own an interest in said vessel.

The question, therefore, is, can Barney Van Patten, the real owner of this quarter interest, under the circumstances of this purchase by Consaul, be held liable in any manner to him (Consaul) as an innocent *bona fide* purchaser for value. The sole evidence introduced by Consaul to support his title, is a copy of these different certificates of enrollment, and he claims that such certificates justify the conclusion arrived at by him that Anderson was an owner of the one-quarter interest, as stated in said enrollment papers.

On the law relating to such matters I find as follows:

"The certificate of enrollment of vessels on the northern frontier, necessarily engaged in both foreign and domestic commerce, is equivalent to both a registry and an enrollment; an enrollment made on the oath of the master alone is void." Desty, Shipp. & Adm. § 22, and authorities there quoted.

" An enrollment is not conclusive nor *prima facie* evidence of ownership, nor of the party named therein as being master." Desty, Shipp. & Adm. § 24, and authorities quoted; 1 Pars. Shipp. & Adm. §§ 47, 48, 49.

"The real owner may prove by parol evidence that the register and enrollment have been fraudulently made, and issued in the name of another." Desty, Shipp. & Adm. § 30, and authorities quoted.

" Independently of the registry act, ownership may be at least *prima facie* established by evidence of possession under claim of title or other matter *in pais*, as in the case of any other chattel." Desty, Shipp. & Adm. § 60, and authorities quoted.

" The register is not a public document or record, but a private instrument, and the mere declaration of the party making it." 1 Pars. Shipp. & Adm. §§ 41, 42, 43, and authorities quoted.

" Of itself the registry is not evidence of property unless it be confirmed by some auxiliary circumstances, to show that it was made by the authority of the persons named in it, who are sought to be charged as owners." *Bas* v. *Steele*, 3 Wash. C. C. 381.

"If one claims to prove his title by the fact that his ownership appears on the register, it may be answered that *he caused it to be there by his own act, and cannot in this way make evidence for himself.* On the other hand,.if he wishes to prove his interest when his name is not there, or if another wishes to charge him as owner by proof outside of the register, which does not show him to be an owner, it may be said that *registration is no necessary incident to ownership,* and therefore the want of registration, or of any name in the register, justifies no conclusion against the ownership." 1 Pars. Shipp. & Adm. §§ 41, 42, and authorities quoted.

" In controversies between owners of a vessel involving a question of title, merely the enrollment is not even *prima facie* evidence. When offered to show title or proprietorship in the person making it, it is wholly inadmissible as evidence, for the reason that it is proof only of *his acts,* and cannot be received against other parties." *The Superior*, Newb. 181.

" Possession and assertion of ownership and notoriety are stronger evidence of property in a ship than registry without possession." 3 Wash. C. C. 390.

It is a well-settled rule of law that if a party sells property, having no right or title to it, the purchaser, though a *bona fide* purchaser, and for a valuable consideration, acquires no title, and the purchaser's title, depending upon the purchase by him in good faith and for valuable consideration, is still without foundation, so long as the seller has neither title nor authority to sell, and the true owner has a right to reclaim his property, and to hold any one responsible who has assumed the right to dispose of it.

The law in regard to ownership of vessels and sales of interest, etc., being as above set forth, and the claimant Consaul having purchased this interest merely on the representation of Anderson that he was owner of it, knowing at the time that Anderson was not in pos-

session and exercising no acts of ownership, and neglecting to ascertain from those who are in possession, and whom he knew were at least part owners of said vessel, whether or not Anderson's claim as part owner was *bona fide*, and after the purchase by him, although told by Mr. Van Patten that he (Consaul) had been defrauded by Anderson, and that he (Anderson) never had owned an interest in the vessel, and, in the face of such information, allowing the purchase money (which then lay in the bank) to be paid over to Anderson, (see uncontradicted testimony of Van Patten,) he cannot claim that he was an innocent purchaser without notice, nor can he claim that he exercised even ordinary diligence in the matter of said purchase.

There is no question that the real owner, Barney Van Patten, was not in any way in fault; the property was sold without his consent or knowledge, and the purchaser must therefore look to the seller for indemnity.

I therefore find, and herewith report, that the claimant Barney Van Patten is the legal owner of the said one-fourth part of said schooner, which said fourth part is covered by the mortgage to Mrs. Nancy L. Van Patten, his wife, and after the payment of all costs incurred in this matter, which may be applied to the value as per sale of the one-quarter interest in the said Nancy Dell, the balance, if any, to be applied and paid over on account of the mortgage of Nancy L. Van Patten, and that the libel of Amelia Beckley and others be dismissed with costs, and that a decree be entered accordingly.

All of which is respectfully submitted.

LAWRENCE PROUDFOOT,
United States Commissioner, Northern District of Illinois.


*W. H. Condon*, for libelants.

*Schuyler & Kremer*, for respondents.

Upon exceptions filed to this report of the commissioner, the case was argued before and heard by Judge HENRY W. BLODGETT, who, after taking it under advisement, affirmed the report of Mr. PROUDFOOT in every respect, and ordered that a decree be entered in accordance therewith.