UNITED STATES *v.* SCOTT *et al.*

*(Circuit Court, N. D. California.   September 23, 1889.)*

PUBLIC LANDS—CUTTING TIMBER—PAYMENT FOR LAND.
  A party prosecuted for cutting timber on the public lands under section
  2461, Rev. St., is only relieved from the criminal prosecution and liabilities
  provided for in said section 2461 by payment of $2.50 per acre for the land on
  which it is cut, in pursuance of the provisions of the act of 1878, (1 Supp. Rev.
  St. p. 329, § 5;) he is not relieved from his civil common-law liability to the
  United States as owner of the land for the value of the timber cut.

*(Syllabus by the Court.)*

At Law.

*J. T. Carey,* U. S. Atty., for plaintiffs.
*J. J. Scrivner* and *R. T. Devlin,* for defendants.
Before SAWYER, Circuit Judge, and SABIN, District Judge.

SAWYER, J., (SABIN, District Judge, dissenting.)   This is an action to recover twenty-six thousand and odd dollars, the value of lumber manufactured from timber cut on the public lands of the United States, described in the complaint.   The third defense set out is, that, after the cutting of said timber, and manufacturing of it into lumber, the defendants were indicted for the offense of cutting the same timber under section 2461 of the Revised Statutes of the United States; that after said indictment, the defendants paid into the court in which it was pending, the sum of two dollars and fifty cents per acre for all lands upon which said timber had been cut, and were, thereby, "relieved from *further* prosecution and liability therefor," in pursuance of section 5 of the act of June 3, 1878, entitled "An act for the sale of timber lands in the states of California, Oregon and Nevada, and in Washington Territories."   1 Supp. Rev. St. 329.   The United States moves to strike out this defense, as constituting no valid answer to the suit, and as being, therefore, irrelevant.   On the part of the defendant it is claimed, that section 5 covers not only all criminal prosecutions, and relieves them "from further prosecutions and liability therefor," incurred under section 2461, Rev. St., but, that, it exonerates and relieves them from all civil liability for the lumber cut, or for its value. The United States, on the other hand, claim, that they are only relieved from the penal liabilities incurred under said section 2461, and the question thus raised is the one to be now determined.   Section 2461 makes it an offense against the United States to cut and destroy or remove timber from the public lands in the way alleged in the complaint; and provides, that, "any person so cutting timber," shall pay a fine not less than triple the value of the trees cut, or timber so destroyed, or removed, and shall be imprisoned not exceeding 12 months.   There is, therefore, a criminal liability created which is to be prosecuted and punished by indictment—the penalty being both fine and imprisonment.   Now what is the *subject-matter* of section 5 of the act of 1878?   Manifestly, by the terms of the statute, persons prosecuted and the liabilities for which they

are prosecuted, "for violating section two thousand four hundred and sixty-one." They are to be relieved from "further prosecution and liability," under said former section. It would be a strained construction, to extend the section to other civil rights of the United States, not specifically, or at all, mentioned. The subject-matter of the provision seems, manifestly, limited to prosecutions under section 2461. When the timber is once severed from the land, it ceases to be a part of the realty, and becomes personal property, having no further relation to the realty whatever. But the title to the personal property is still in the United States. The property becomes subject to the laws that govern personal property. The relation of the parties to the property becomes changed. Under the case of *Wooden-Ware Co.* v. *U. S.*, 106 U. S. 432, 1 Sup. Ct. Rep. 398, the United States can replevy the lumber or timber, wherever found, and if it cannot be found, and the cutting was knowingly and willfully done, recover the full value of the lumber, or timber, with the enhanced value by reason of its manufacture, and carrying to market. Suppose in the case of timber cut prior to the act of 1878, in violation of section 2461, the United States had recovered the lumber or timber made, or its enhanced value in an action of replevin, I apprehend, that this would not have relieved the parties from the criminal liability and prosecution under the statute. The latter was an additional liability created for the protection of the timber on the public lands. So, also, if the proceedings were reversed, and a conviction had, and punishment executed under the statute, I apprehend, that the party would not thereby be relieved from his civil liability, under the general law of the land, wholly independent of the statute. The United States would still own the lumber. The two liabilities are entirely independent of each other. They have no relation whatever to each other. So also, if since the passage of the act of 1878, the United States under the rule established in *Wooden-Ware Co.* v. *U. S.* should recover the lumber or timber, or its enhanced value after carried to market, this, I take it, would not, even now, relieve the party cutting it from prosecution criminally under section 2461, Rev. St. If he should upon such subsequent prosecution, pay into court two dollars and fifty cents per acre as provided by section 5 of the act of 1878, it would hardly be contended, I think, that he would be entitled to a credit for the amount already recovered by the United States for the value of the lumber. The value of the lumber recovered would, doubtless, in many cases, be ten times the amount of two dollars and a half per acre for the land on which it had been cut. If he would be entitled to a credit to the amount of two dollars and a half per acre, it would be upon the principle that the government authorizes him to buy all the timber there was on the land before it was denuded after having been detected in his offense, and upon that theory the government when seeking to convict him should refund the full amount of its recovery in the civil suit, over the sum of two dollars and a half per acre. On this hypothesis, it would be a great advantage, instead of an inconvenience to the offender to be prosecuted criminally instead of civilly. There is little land I apprehend, that is worth being denuded of its timber, at all, for lumber or timber, upon

which parties would not gladly pay two dollars and a half per acre for the right to cut it, provided it cannot be done on easier terms. But if as trespassers they can cut and destroy on larger tracts of land and only occasionally, *when detected and prosecuted, criminally*, secure immunity by paying two dollars and a half per acre for small portions of their depredations, they are not likely to trouble themselves much about consequences. On that hypothesis, on the general result, it would be much more profitable to unlawfully *take than to buy* the timber, even if it could be bought. Such a construction of the act of 1878 as is contended for by defendant, would hold out a large premium to trespassers to utterly denude the public lands of their most valuable timber. I do not think congress in the act of 1878 contemplated any such absurd consequences.

I do not perceive that reversing the proceedings and indicting the party first, and beginning the civil action afterwards, would vary the rights of the parties. I am of the opinion that a payment in pursuance of section 5 of the act of 1878 does not discharge the party from liability other than that created by section 2461, Rev. St. and that the facts alleged in the third division of the answer, constitute no defense, and that that defense should be stricken out as irrelevant. It is so ordered.