PROVIDENCE MIN. & MILL. CO. v. NICHOLSON et al.

NICHOLSON et al. v. PROVIDENCE MIN. & MILL. CO.

(Circuit Court of Appeals, Eighth Circuit. February 25, 1910.)

Nos. 3,118, 3,119.

**1. CORPORATIONS (§ 316\*)—CONTRACT MADE BY OFFICER FOR HIS OWN BENEFIT —RATIFICATION.**

A corporation, which had authorized its superintendent to lease mining ground owned by it to be mined by the lessees on payment of a royalty on the product, and which, with knowledge that he had leased certain of such ground to a corporation of whose stock he was principal owner without objection, permitted such lessee to expend large sums in the erection of a mill and improvements to work the same, and received from it and retained the royalties provided by the lease, by its conduct ratified such lease and is estopped to deny its validity.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1412; Dec. Dig. § 316.\*

Power of corporate officers in their individual capacity to deal with the corporation, see note to Bensiek v. Thomas, 13 C. C. A. 466.]

**2. MINES AND MINERALS (§ 62\*)—MINING LESSEE—ACTION AGAINST TRESPASSER FOR CONVERSION OF ORE.**

A lease of a tract of land for a term of 10 years, by which the lessee agreed to mine the same, sell the minerals produced, and pay the lessor a percentage of the proceeds as royalty, was a mining lease which gave the lessee no property rights in the ore under the land excepting such as it should mine and sell within the term of the lease, and, in an action against a trespasser who mined and removed ore from the premises during the term, it was not entitled to recover the value of such ore, but damages only to the extent of its actual injury proved.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 173-180; Dec. Dig. § 62.\*]

**3. CORPORATIONS (§ 319\*)—SUIT BY CORPORATION FOR ACCOUNTING BY OFFICER.**

Equity has jurisdiction of a suit by a corporation against its managing agent to require an accounting in respect to his management of its property, even though the ultimate object sought is to obtain a money judgment.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 319.\*]

---

Appeal from the Circuit Court of the United States for the Southwestern Division of the Western District of Missouri.

Suit in equity by the Providence Mining & Milling Company against Frank Nicholson and others. From the decree both parties appeal. Affirmed.

Frederick W. Lehmann and Thomas Hackney, for Providence Min. & Mill. Co.

Jas. F. Green and Frederick N. Judson (J. W. McAntire and Haywood Scott, on the brief), for Nicholson and others.

Before SANBORN, Circuit Judge, and RINER and WM. H. MUNGER, District Judges.

WM. H. MUNGER, District Judge. These two cases present appeals by both complainant and defendants from the judgment of the Circuit Court.

Complainant, a corporation, organized under the laws of the state of Maine, filed its bill in this case, alleging, among other things, that in May, 1904, it acquired a leasehold interest for mining purposes in a certain described 40 acres of land; said leasehold interest running for a term of 10 years from the date thereof. Complainant caused said land to be surveyed and a plat made thereof, dividing the land into lots of 200 square feet, numbered from 1 to 49, both inclusive, and, pursuant to the provisions of section 8766 of the Revised Statutes of Missouri of 1899 (Ann. St. 1906, p. 4068), opened the same for mining purposes, and prepared and posted in its office on said land a printed statement of the terms, conditions, and requirements upon which portions of said land should be prospected, leased, and mined. Among the provisions were that all ores produced by lessees should be sold to the highest and best bidder approved by the company's superintendent, and the proceeds of all sales should be paid over to said superintendent, who would return to the lessee the full amount, less 20 per cent. which should be deducted for royalty. All ores were to be weighed on scales designated by complainant. The defendant Nicholson was a director of complainant company, and the general manager of its mining property in the state of Missouri. Nicholson made leases on several lots on terms requiring the lessee to pay 20 per cent. royalty on all proceeds of ore mined and sold. Among the leases so made by Nicholson was one made in June, 1905, to the South Portland Mining Company. The complainant alleged that the South Portland Mining Company was a corporation, organized by Nicholson, the stock of which was substantially all owned by him, and asked to have said lease canceled and annulled. The bill also asked for an accounting to be taken of ore taken by said South Portland Mining Company from lots 39, 46, and 47, which were not included in the lease so made by Nicholson to said South Portland Mining Company; and that complainant recover the full market value of said ore. It also prayed an accounting for the value of certain air and steam supplied by the complainant to the South Portland Mining Company. The bill sought other and additional relief; but, as those three are the only questions presented on these appeals, it is unnecessary to state the other matters. Issues were joined

upon the bill, the cause referred to a master, as prayed by complainant, proofs taken, and the master's findings and recommendations were submitted to the court.

The master found that the lease made by Nicholson, on behalf of the complainant, to the South Portland Mining Company, was, in effect, a lease to himself (Nicholson), as he was practically the owner of the entire stock. The master gave a comprehensive review of all the evidence and found that the South Portland Mining Company, after receiving the lease, expended large sums of money in the erection of a mill and other necessary improvements thereon for the successful working and operation of the same, and that complainant knew of the facts of the giving of such lease, of Nicholson's interest in the South Portland Mining Company, and of that company's large expenditure of money as aforesaid, and made no complaint in respect thereof until the bringing of this action, but, with such knowledge, received and retained as royalties 20 per cent. of the market value of ore extracted under said lease by said South Portland Mining Company; that by reason thereof complainant was estopped from denying the validity of the lease; and, further, that the complainant, with knowledge of the facts, had, by its conduct, ratified the action of Nicholson in making said lease. An exception was filed to this finding of the master by complainant, and upon hearing the master's finding in this respect was affirmed by the Circuit Court. From a full review of all of the evidence, we are satisfied that the master's findings of fact are supported by the evidence, and that the conclusion of the master and the trial court that complainant was not only estopped from now disputing the validity of the lease, but had also ratified the giving of the same, was a correct announcement of the law under the facts. To undertake to give a fair synopsis of the evidence bearing upon this proposition would extend this opinion an unnecessary length and would not be of value.

The master also found that complainant was entitled to recover from the defendants the sum of $2,835.30, the value of air and steam furnished by complainant by direction of Nicholson to the South Portland Mining Company. Defendants filed exceptions to this finding of the master, and the master's report in this respect was approved by the trial court. To review the judgment in this respect, defendants have prosecuted an appeal. We have examined the evidence and are clearly of the opinion that the finding of the master in this respect is fully sustained, and the judgment of the trial court as to this item is sustained.

The master farther found that the value of the ore mined by the South Portland Mining Company, from said lots 39, 46, and 47, not covered by its lease, was $33,332.60; that it paid to, and there was received by, complainant, as royalties thereon, the sum of $6,666.52, leaving a balance retained by the South Portland Mining Company, as proceeds of such ore, the sum of $26,666.08, for which amount the master found complainant was entitled to a judgment against the defendants, for the reason, as found by the master, that, in taking ore from said lots, said South Portland Mining Company was a willful trespasser. Defendants excepted to this finding of the master, and

upon hearing the trial court modified the finding of the master that the defendants were willful trespassers, and held that they were only liable for the value of the ore in place, which did not exceed the amount of the royalty paid. The master and the trial court both found that the South Portland Mining Company did not make a profit but lost money upon the ore thus taken from said lots.

From the judgment of the trial court, disallowing the item in the master's report, complainant prosecutes an appeal.

The view we take of this question involves a consideration of the rights and property interests acquired by complainant under its lease for the term of 10 years of the 40 acres before mentioned. That lease, among other things, contained the following provisions:

"That the party of the first part (lessor), in consideration of the undertaking and agreements hereinafter to be kept and performed by said second party, his successors and assigns, does by these presents demise and lease unto said party of the second part, successors and assigns, the following described real estate and property in Jasper county and state of Missouri, to wit:

"The northwest quarter of the northwest quarter of section seven (7) township twenty-eight (28) range thirty-two (32). [Then follows a list of certain machinery.] * * *

"The said party of the second part, his successors and assigns, shall mine said land in a good, thorough and workmanlike manner, shall keep all shafts and drifts well and securely timbered and supported and shall not remove such timbers and supports, so as to endanger the ground or permit the same to cave or fall in.

"Mining shall be carried on in good faith continuously, and shall not be suspended at any time except on written permission of said party of the first part. All mineral shall be cleaned and prepared for market on said land. * * *

"The party of the second part, his successors and assigns, shall keep correct account of all minerals mined, the kind and weight thereof, to whom sold, and the price received therefor, which books shall be open to the inspection of the party of the first part at all reasonable times.

"The party of the second part, his successors and assigns, shall pay to the party of the first part on Monday of each week, as rent or royalty, 10 per cent. of the market value of all ores mined and sold during the preceding week.

"The party of the second part, his successors and assigns shall have the right to erect all necessary buildings and machinery on said land for the purpose of mining and dressing, crushing and cleaning ores thereon, and to remove the same at the expiration or forfeiture of this lease, except timbering and other improvements necessary to support the ground.

"All uses of the ground not inconsistent with thorough and proper mining as herein required are hereby reserved to the said party of the first part.

"Any failure to comply with and perform the requirements of this lease in good faith at any time shall end and determine the same and the said party of the first part may declare an ouster and re-enter upon and hold said demised premises."

We think it clear that complainant did not, under said lease, acquire anything but a mining interest in and to said land; that it acquired no property interest to the ore underneath the land covered by the lease, excepting such as should be mined and sold therefrom; and that the interest in ore not mined by complainant during the term of the lease remained in the lessors. In this respect we think the construction given by this court to a mining lease, in Butler v. McGorrisk, 114 Fed. 300, 52 C. C. A. 212, applicable here. Complainant, acquiring no estate in the land but simply an interest in the mineral which it

should mine and remove therefrom, was not entitled to maintain an action against a trespasser, who mined and removed ore from the premises, without showing that it was directly injured thereby. No proof of any injury to complainant was given, excepting the fact that defendants mined and removed the ore and the market value thereof.

In Baker v. Hart, 123 N. Y. 470, 25 N. E. 948, 12 L. R. A. 60, a similar question was decided. In that case the complainants, as lessees, obtained the sole and exclusive right to quarry stone on certain lands for a term of years. Defendants entered upon the premises as trespassers and quarried and removed stone therefrom during the term of the lease, and complainants brought an action to recover the value thereof. The court said:

"The right to take all the stone on the land without restriction in time or quantity might readily be held to transfer its ownership. But I have found no case which asserts entire and complete title in the lessee where there was merely a right to mine or quarry, restricted and limited by time or quantity. In such a case all of the stone on the premises does not pass to the lessee, but only such and so much as within the boundaries of his right he cuts and quarries. The defendants were, of course, trespassers; they entered upon the premises without right and cut and carried away a quantity of stone. The plaintiffs, under objection, were allowed to prove the value of the stone and to recover that value on the theory that they owned it. But they did not. Their lease gave them no title to it; they did not cut or quarry it, and the ownership remained in their lessor. Undoubtedly the act of the defendants was an infringement of their rights, for which they could recover such damages as they in fact sustained, but they proved none. If their limits would have exhausted all the stone on the 25 acres, then certainly they would have lost the value of what was wrongfully removed; but, if the supply was such that there remained for them all and more than they could quarry or remove, they at least lost no stone which they were entitled to have, for enough remained to fully satisfy their entire right. Injury in such case would fall upon the lessor, whose property had been taken. It may be that the lessees were in some manner or to some extent injured by the trespass of the defendants, although stone enough remained to satisfy the exigencies of their contract. We do not know how that may be in the absence of proof and therefore may prudently refrain from any suggestions about it. It is enough for present purposes that the plaintiffs established no ownership of the stone and no right to recover its value as owners, and so the judgment rendered was erroneous."

Applying that decision to this case, it is clear that complainant did not obtain title and ownership by its lease to all of the ore under the surface of the ground, but only such as it should mine therefrom during the term of its lease. If complainant had shown by proof that there was no more ore in the ground than it could have reasonably expected to mine during the term of its lease, and that it had thus been injured by defendants' act, a different question would have been presented. No such evidence, however, was offered. That complainant did not acquire by the lease such an interest or title to the ore taken by the defendants as to entitle it to recover from defendants as trespassers the value of the ore so taken is sustained by the following authorities: Grubb v. Bayard, Fed. Cas. No. 5,849; Appeal of Sanford, 75 Conn. 590, 54 Atl. 739–741; Arnold v. Bennett, 92 Mo. App. 161.

Nicholson, however, being the managing agent of complainant, could not deal with the property intrusted to his care, in his own interest, without being required to account to complainant for any and all profits made by such dealing in his own behalf. As the master and the trial

178 F.—3

court found, and such finding being supported fully by the evidence, that no profit was made, and complainant having received the amount of royalty which sublessees were paying for the privilege of mining, we agree with the trial court that, under the proofs, complainant is not entitled to a greater amount.

Defendants, however, insist that the equity of complainant's bill was to have the lease to the South Portland Mining Company canceled and set aside; that, as it failed in this respect, the action should have been dismissed and no money judgment rendered against defendants. The equities of the bill were not based entirely upon a claim to have such lease canceled. Nicholson was an officer of complainant and as such intrusted with the possession and management of the property of complainant. This relation constituted him at least a quasi trustee, and equity had jurisdiction to compel a full and complete accounting by him of the manner in which he had executed the trust, even though the ultimate object sought was to obtain only a money judgment. Clews v. Jamieson, 182 U. S. 461, 479–481, 21 Sup. Ct. 845, 45 L. Ed. 1183.

We think the decree of the Circuit Court was right, and it is affirmed.

---

NOTE.—The following is the opinion of Pollock, District Judge, in the court below:

POLLOCK, District Judge. This suit was brought by complainant, a corporation of the state of Maine, and the owner of a mining lease for a term of 10 years from May 3, 1904, on 40 acres of mineral-bearing land in Jasper county, this state, which it had caused to be platted into 49 mining lots and opened for mining purposes under the laws of this state, against Frank Nicholson, Katherine Nicholson, his wife, James W. Trick, Beulah B. Hurst, Sydney L. Wilkins, South Portland Mining Company (hereinafter called the Portland Company), and the Engineers' Zinc Company (hereinafter called the Engineers' Company), the last two named defendants being corporations of this state, and each and all of defendants being citizens of this state, to cancel and annul a mining lease made in the name of complainant by defendant Frank Nicholson, who, at all times herein mentioned, was the general manager and a director of complainant company, to the Portland Company, of complainant's mining lots 1 to 4, 11 to 18, and 25 to 28 (both numbers in each case being inclusive); also to cancel and set aside a certain other mining lease caused to have been made in its name by Frank Nicholson, its general manager, of its mining lots 29 to 31 and 40 to 45 (both inclusive), to one Burch, and thereafter transferred to defendant the Engineers' Company; for an accounting with defendants for moneys averred to belong to complainant, wrongfully appropriated and used by defendants in constructing a mining mill on the leased property; for damages averred to have been sustained by complainant by reason of the defendants, acting in the name of the Portland Company, wrongfully and without leave or license to so do, entering upon the mining lots of complainant Nos. 37, 38, and 40, and 46 to 48 (both inclusive), and taking therefrom a large amount of valuable mineral, and appropriating the proceeds to the use of defendants; and also an accounting with defendants for the reasonable use of air and steam furnished from an air-compressing plant erected on complainant's mining lot No. 33 by the use of money belonging to complainant, and wrongfully used by defendants in furnishing free compressed air and steam to the Portland Company in its mining operations; also for other and further sums of money belonging to complainant, wrongfully appropriated and used by defendants, acting in the name of the Portland Company, in constructing steam lines and air lines for the purpose of furnishing free to

the Portland Company air and steam, for machinery purchased, kept, and used by defendants. Defendant Katherine Nicholson is the wife of Frank Nicholson, and defendants Trick, Hurst, and Wilkins were, as averred in the bill, at all times in the employ of and subject to the orders of defendant Frank Nicholson. That the personal defendants, each and all, as averred in the bill, entered into a fraudulent conspiracy for the purpose of depriving complainant of its property rights by forming the defendant corporations, the Portland Company and the Engineers' Company, and wrongfully, through the defendant Frank Nicholson, and for the use, benefit, and profit of defendants, making the leases sought to be annulled from complainant to said companies. That defendants further conspired through the Portland Company to wrongfully and willfully trespass upon complainant's mining lots named, extracting therefrom valuable minerals, and appropriating the same to the use of defendants; further conspired to wrongfully use the money of complainant in building the compressed air plant mentioned on the mining property of defendant, and air and steam pipe lines running therefrom, and furnishing, free of charge, for the benefit of defendants, air and steam to the Portland Company in its mining operations; and wrongfully conspired, for the profit of defendants, to appropriate and use money belonging to complainant, furnished by it to defendant Frank Nicholson, its general manager.

To this bill defendants answered, in substance denying the conspiracy charged by complainant against them, denying any wrongful use or appropriation of complainant's property or moneys by defendants, and affirming the validity of the leases made by complainant company, through its general manager, Nicholson, sought to be canceled by complainant.

On full and voluminous proofs taken the master has reported the facts found therefrom by him, in brief, as follows: (1) That the unlawful combination charged by complainant against defendants is not proven. (2) That the leases sought to be canceled by the bill are valid and binding on complainant. (3) That on the proofs there is no equity in the bill as against defendants other than Frank Nicholson and the Portland Company. (4) That as against defendants Frank Nicholson and the Portland Company complainant is entitled to an accounting for compressed air and steam wrongfully furnished free to the Portland Company, as charged in the bill, and the value of such free service is $2,835.30. (5). That complainant is entitled to an accounting with Frank Nicholson and the Portland Company for the amount of damages sustained by it on account of the willful trespass of the Portland Company, at the instance of Frank Nicholson, its general manager, on its mining lots 39, 46 and 47, and the wrongful extraction therefrom of a large amount of valuable mineral. While it is found by the master defendants made no profit from the mineral extracted by this willful trespass, that the measure of complainant's recovery is the price obtained for such mineral by defendants when sold on the market, and this sum is found to be $26,666.08, after allowing credits for royalties received by complainant therefrom, and a decree is recommended by the master in accordance with the findings made.

To this report complainant has filed exceptions as to that part which goes to uphold the validity of the lease made to the Portland Company. Defendants Frank Nicholson and the Portland Company have filed exceptions to those parts of the report which go to the taking of an account against them at all, and to the measure of damages employed by the master in taking an account of the damages sustained by complainant on account of ore extracted from its property. These exceptions have been fully presented in oral argument, on briefs of counsel, and stand for decision. The above is but a very brief summary of the pleadings, voluminous proofs, lengthy report of the master, and exceptions taken thereto by the parties. On the many intricate and important questions of law presented thereby, able briefs have been filed by solicitors in support of their contentions made, and the master has supported his findings and conclusions by numerous authorities. However, it will not be possible for this court, in the course of a brief memorandum decision, such as this, to do more than to state the conclusions reached from a careful reading and study of the report of the

master, the exceptions taken, the briefs and arguments of solicitors, and an examination of the proofs. In so doing the questions raised by the exceptions will be considered in their order, as above stated.

And, first, as to the exceptions taken by complainant to the findings and recommendations of the master as to the validity of the lease made by Nicholson, as general manager of complainant, to the Portland Company. The charges made in the bill of unlawful confederation on the part of defendants being not proven, the objection to the validity of the lease rests on the fact that it was made by Nicholson, as general manager of complainant, without authority from its board of directors, to the Portland Company, of which he was the president, and in which he was largely interested. In fact, the insistence is that it was a lease of the mining property of complainant, made by its general manager without authority, to himself and for his use and benefit, in violation of the trust reposed in him by complainant. And this is the view of the case taken by the master from the proofs. However, the master further finds, as pleaded by the Portland Company, that complainant knew of the existence of the lease, knew that Portland Company was in possession under it, making valuable, extensive, and lasting improvements on the land, for the purpose of preparing itself to extract the mineral therefrom, and had been so in possession since the making of the lease; that complainant, without protest, had received its royalties on all minerals extracted from the premises, when sold, and knew through its representatives that its general manager, who assumed to act for it in the making of the lease, was interested in and connected with the Portland Company. From all of which it was found by the master that in equity and good conscience the lease should be now upheld and complainant estopped from denying its validity. To this latter finding of the master it is contended by solicitors for complainant the proofs do not disclose complainant to have any knowledge of Nicholson's connection with the Portland Company. Again, if he did, as the making of the lease was in violation of the fiduciary relation of Nicholson with complainant, it is void as against public policy, and not the subject of ratification by complainant.

As to the first contention, I am agreed with the master, from a reading of the proofs taken, that complainant must have known of Nicholson's relation to the Portland Company. As to the latter question, it is true, as contended by solicitors for complainant, that an act done without power is absolutely void, and while it must be conceded, as a general rule, a conveyance, made by one acting in a trust relation, of his principal's property to himself, for his own use and benefit, will ordinarily be held absolutely void, yet it is equally true, where one acting in a trust capacity in good faith deals with the trust property, believing he is subserving the best interests of his principal in so doing, his action will not be declared absolutely void, if the act done inures to his benefit; but, upon investigation, no wrong appearing to the principal therefrom, the act may be upheld. And where in such case the agent or representative has the power to perform the act in the first instance, it may thereafter be ratified by the principal, or the principal may be held, by its acts and conduct done after knowledge obtained of the dual capacity in which its representative acted, estopped from questioning the validity of the act done.

As said by Mr. Justice Miller, delivering the opinion of the court in Twin Lick Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 328: "That a director of a joint-stock corporation occupies one of those fiduciary relations where his dealings with the subject-matter of his trust or agency, and with the beneficiary or party whose interest is confided to his care, is viewed with jealousy by the courts, and may be set aside on slight grounds, is a doctrine founded on the soundest morality, and which has received the clearest recognition in this court and in others. Koehler v. Black River Falls Iron Co., 2 Black, 715 [17 L. Ed. 339]; Drury v. Cross, 7 Wall. 299 [19 L. Ed. 40]; Luxemburg R. R. Co. v. Maquay, 25 Beav. 586; Cumberland Co. v. Sherman, 30 Barb. [N. Y.] 553: [Hoffman Steam Coal Co. v. Cumberland Coal & Iron Co.] 16 Md. 456 [77 Am. Dec. 311]. The general doctrine, however, in regard to contracts of this class, is, not that they are absolutely void,

but that they are voidable at the election of the party whose interest has been so represented by the party claiming under it. We say this is the general rule; for there may be cases where such contracts would be void ab initio, as when an agent to sell buys of himself, and by his power of attorney conveys to himself that which he was authorized to sell. But, even here, acts which amount to a ratification by the principal may validate the sale." Each case must be viewed in the light of its attendant facts, and, so viewed, how does the present case stand?

Complainant does not own the fee in the property here dealt with by Nicholson, its general manager. It has a lease thereon running for a term of 10 years. It was held to pay a royalty of 10 per cent. to the owner of the fee for all minerals marketed from the property. It derived its benefit under the lease by receiving 10 per cent. of all minerals marketed therefrom during the term of its lease. After that term the entire property reverts to the owner of the fee; hence it was to its advantage to have the property fully prospected by sublessees at their proper cost and expense, and as large a quantity as possible of the minerals taken out and marketed within the terms of the lease, and it was the duty of Nicholson, in charge of the property as general manager of complainant, to further this interest of his company in all proper respects. As general manager he would undoubtedly have the inherent power to enter into contracts on behalf of his company which would further the object and purpose of the company and advantage his principal, and, having such inherent power, I can see no reason why his act in this case in leasing a portion of the mining lots to the Portland Company, to be prospected and developed by it at its own cost and expense, under an agreement with it that it should pay the 20 per cent. royalties reserved in the lease, may not be ratified by complainant on the facts found by the master, although, as appears, Nicholson was interested in the Portland Company; for, as seen by the record, the complainant itself, and not Nicholson, fixed the terms and conditions on which sublessees should operate the property in its mining rules and regulations published in pursuance of the laws of the state, as follows: "All ores produced by lessees shall be sold to the highest and best bidder approved by the company's superintendent. The proceeds of all sales shall be paid over to said superintendent, who will return to the lessees the full amount, less 20 per cent., which shall be deducted for royalty." Hence the terms and conditions on which the property should be leased, as stipulated in the lease to the Portland Company, involved no question of judgment or discretion on the part of its general manager of which he either could or did advantage himself or the Portland Company by the lease made. I am, therefore, of the opinion the exceptions taken to the report of the master by complainant must be overruled and denied, and the validity of the lease in question decreed as found by the master.

As to the exceptions taken by defendant Nicholson and the Portland Company, I cannot agree with the contention first made. When it was found by the master the unlawful confederacy and misapplication of moneys charged against defendants were not supported by the proofs, and the validity of the leases made by Nicholson were, on the proofs, recommended to be upheld, this court then lost jurisdiction of the entire controversy, and the recommendation of the master should have been to dismiss the bill in its entirety, without taking an accounting between the parties; and this for two reasons: First, the question was not presented or urged upon the master, nor was it made as a defense to the bill, and, under the authorities, it must be deemed to have been waived. Again, the bill presents matters of equitable cognizance. This conferred jurisdiction on the court to investigate the charges therein made, and the court, having properly assumed jurisdiction of the controversy, may retain it, to the end of doing full justice between the parties in all things arising out of the subject-matter involved. This principle is elementary, and needs the citation of no authorities in support. Therefore, to my mind, the accounting taken by the master was proper.

As to the finding of the master of the value of the free service furnished by complainant to the Portland Company by direction of Nicholson, its

general manager, and the amount thereof, as stated, $2,835.30, there can be no doubt on the part of any one but that Nicholson, as general manager of complainant's property, did not have the power to give the property away. He should have charged the defendant the Portland Company the value of the service rendered by the use of complainant's property to it, and it should have paid for the same. Not having so done, the Portland Company must account therefor and pay, or Nicholson must respond to his principal. As to the amount fixed, and the method employed by the master in arriving at this amount. I am inclined to the opinion the result attained is reasonable, just, proper, and equitable. Therefore, the exceptions taken thereto by defendants will be overruled, and a decree entered as recommended by the master.

And this brings me to the important and difficult question presented by the exceptions taken to this report; that is, the measure of recovery recommended by the master for ore extracted from lots 39, 46, and 47, by defendant the Portland Company, at the direction or on the authority of the general manager of complainant. Nicholson, without written lease or any apparent authority to so do. The master, after full investigation of this question, and on deliberate consideration, recommends a decree against Nicholson and the Portland Company for $26,666.08, the value of the ore mined and sold from the property leased, less royalties paid to complainant, as for a willful trespass on the property. Is such recommendation, in the light of all the proofs in this case and the further findings of the master, fair, just, and equitable between the parties?

That the Portland Company lost money on its mining operations on these lots is not only found by the master, but is practically conceded from the proofs. That Nicholson, for complainant, at a time when he was general manager, in charge of its affairs, verbally authorized the Portland Company to enter upon and engage in mining operations on the lots in question, on the payment of the usual 20 per cent. royalties, and that such royalties were paid to complainant, of which it received and kept 10 per cent. as its profits under its lease, and paid over the remaining 10 per cent. to the owner of the fee, is conceded. Should the complainant in this suit, on the accounting prayed, in equity and good conscience recover from Nicholson and the Portland Company the full price for which the ore mined from these lots was sold by that company, less the royalties received by it?

The master has recommended such recovery on the theory that the Portland Company was in such operations a willful trespasser on the property of complainant, and that Nicholson was the alter ego of that company. While the "willful trespass" doctrine is quite well settled, as applicable to all that class of cases when one knowingly, intentionally, and willfully enters upon the property of another and extracts therefrom minerals in the ground, standing timber, and the like, or, in the case where one purchases from such willful trespasser, as were the facts in the cases cited by the master of Pine River Logging Co. v. United States, 186 U. S. 279, 22 Sup. Ct. 920, 46 L. Ed. 1164, Wooden Ware Co. v. United States, 106 U. S. 432, 1 Sup. Ct. 398, 27 L. Ed. 230, Trustees Dartmouth College v. International Paper Co. (C. C.) 132 Fed. 95, Durant Min. Co. v. Percy Consol. Min. Co., 93 Fed. 167, 35 C. C. A. 252, and Sweeney v. Hanley, 126 Fed. 97, 61 C. C. A. 153, and many other cases cited and relied upon by solicitors for complainant, yet the question remains: Is the well recognized and settled doctrine of the "willful trespass" rule applicable to the facts in this case?

The reason for the "willful trespass" rule, it would seem, is this: As the original taking is in the nature of a theft of the property taken, any subsequent act done by the trespasser, or one purchasing from him, which enhances the value of the stolen property, cannot be permitted to inure to the benefit of the wrongdoer or his vendee; for, as such wrongdoer had no title, he could convey none to another. Hence the owner can in such case recover in an action in the nature of trover the full sum for which the property sold, in its improved state, or its full value in its improved condition, wherever found by the owner at the time of bringing his action. Wooden Ware Co. v. United States, supra.

As stated by Lord Hatherly, delivering the opinion in Livingston v. Raw Yards Coal Co., 5 App. Cas. 25, quoted with approval of Mr. Justice Miller, delivering the opinion of the court in the case last cited: "There is no doubt that if a man furtively, and in bad faith, robs his neighbor of his property, and because it is underground, is probably for some little time not detected, the court of equity in this country will struggle, or, I would rather say, will assert its authority, to punish the fraud by fixing the person with the value of the whole of the property which he has so furtively taken, and making him no allowance in respect to what he has so done, as would have been justly made to him if the parties had been working by agreement." But, "when once we arrive at the fact that an inadvertence has been the cause of the misfortune, then the simple course is to make every just allowance for outlay on the part of the person who has so acquired the property, and to give back to the owner, so far as is possible under the circumstances of the case, the full value of that which cannot be restored to him in specie."

In the present case, however, the trespass upon and the extraction of the ore from the lots in question was done by the Portland Company with the sanction of one placed in authority by complainant as general manager. As such officer of complainant he could undoubtedly have leased the lots to any person or corporation in which he was not interested on precisely the same terms he authorized the Portland Company to operate thereon, and his principal would have been bound by such lease. Again, in such case the mere fact, alone, that the terms of the lease agreed upon between the parties was not reduced to writing, would not destroy or change the rights of the parties thereunder, or convert the tenant entering under such verbal lease into a trespasser. Such verbal lease might be nonenforceable because of the statute of frauds, or other like reason; but such question is apart from the one under consideration. Does, then, the fact that Nicholson, the authorized officer of complainant, who granted the license or made the verbal lease to the Portland Company, was interested in that company, make both himself and that company liable in damages as for a willful trespass to complainant? I think not, and for these reasons:

As has been seen, complainant placed Nicholson in charge of the management of its property, and authorized him to contract with others for its development and operation on certain express terms and conditions as to the payment of royalties, prescribed by its mining rules. This was done by the license granted to the Portland Company. True, Nicholson was interested in that company, and the license granted was for this reason voidable, but not void; for, as seen before with reference to the written lease between the parties, it might have been ratified by complainant on full information of all the facts. Therefore the license thus granted constituted some color of right or authority in the Portland Company to do as it did. Again, complainant did not own the property which it claims was trespassed upon. It was merely a tenant for a term of years. It did not own the minerals extracted therefrom, but by the terms of its lease it must, as rental, pay 10 per cent. of the price at which the ore mined therefrom was sold. It reserved to itself 10 per cent. from all sales of ore mined therefrom as its profits under its lease from the owner. At the expiration of its lease, possession of the property and all interest therein, including all ore mined at that time, reverts to the owner. The more mineral taken from the property during the term of the lease, the greater the profit to complainant thereby. It was, therefore, the duty of Nicholson, as general manager of complainant's business and property rights, to be diligent in its development and operation. Under such circumstances, what damage could result to complainant if Nicholson should form companies for the very purpose of developing and operating the mining lots of complainant, so long as the stipulated royalties are contracted for and paid? In such case, of course, it would be Nicholson's duty to advise his principal of his interest in such companies, and thus deal openly and fairly with his principal, and not covertly.

From all of the facts and circumstances, I am of the opinion, while the complainant, when advised of the permission granted by Nicholson to the

Portland Company, in which he was interested, could terminate such relation at once, as was done in this case, or by suit brought for that purpose on account of Nicholson's interest in the Portland Company have had decree terminating such license, yet the permission granted by Nicholson and acted upon by the Portland Company is sufficient color of right to relieve that company from the assessment against it of the harsh rule of damages applied to one who willfully and wrongfully trespasses upon the property of another and steals therefrom. The license granted to the Portland Company by Nicholson being revocable at the will of complainant on account of Nicholson's undisclosed interest in the Portland Company, the measure of its damages, I think, must. be neither that of a willful trespasser, on the one hand. nor that of the mineral in place which was extracted, on the other, for complainant did not own such mineral. But, rather. its recoverable damages must be limited to its interest in the minerals. in place, extracted by the Portland Company therefrom, as measured by complainant's right therein under its lease from the owner.

As said by Mr. Justice Miller, delivering the opinion of the court in Wooden Ware Co. v. United States, supra: "The weight of authority in this country, as well as in England, favors the doctrine that, where the trespass is the result of inadvertence or mistake and the wrong was not intentional, the value of the property when first taken must govern; or. if the conversion sued for was after value had been added to it by the work of the defendant, he should be credited with this addition."

Mr. Justice Peckham, delivering the opinion of the court in United States v. St. Anthony R. R. Co., 192 U. S. 524, 24 Sup. Ct. 333, 48 L. Ed. 548, said: "In the Pine River Logging Case, the parties to the contract were held liable for the full value of the timber after it was cut and had increased in value by reason of the labor expended upon it by the parties who did the cutting. This was on the ground that they were willful trespassers, acting in bad faith, and ought to be made to suffer some punishment for the depredations; but it was settled there, where the trespass is the result of inadvertence or mistake, and the wrong was not intentional, the value of the property when first taken must govern." "Although in this case it is agreed that the defendant did not act under a mistake, meaning thereby that the facts touching the status of the timber and the lands where the timber was cut were known, yet what was done was in the belief, by the defendant that the lands were adjacent to the line of the road and the cutting was legal. It was done upon the advice of counsel, and the defendant used ordinary care and prudence in first being advised as to the law upon the facts as they have been agreed upon, and there was no intention on the part of the defendant to violate any law or to do any wrongful act. This, we think, clearly takes the case out of the principle of those above .cited, and the measure of damages must, therefore, be ,the value of the timber at the time and at the place where it was cut."

As said by Judge Sanborn, delivering the opinion of the court in Durant Min. Co. v. Percy Consol. Min. Co., supra: "One who unintentionally, and in the honest belief that he is lawfully exercising a right which he has, enters upon the property of another and removes his ore, his timber, or any other valuable appurtenant to his real estate, is liable in damages for the value of the ore, timber, or other things in its original place, and for no more." Or, as said by the same judge, delivering the opinion of the court in Gold Min. Co. v. Fortune Gold Min. Co., 129 Fed. 668, 64 C. C. A. 180: "The measure of damages for wrongfully taking ore from the land of another through inadvertence or mistake, or in the honest belief that one is acting under his legal rights, is the value of .the ore in the mine."

In 27 Cyc. p. 639, the rule is stated as follows: "An innocent trespasser, one who by mistake or unintentionally, or in the honest belief that he is lawfully exercising a right which he has, enters upon the property or upon the vein of another, and takes the ore, coal, oil or other substance therefrom, may limit the owner's recovery to the value of the substance so taken, less the actual cost of production, including digging, tramming, hoisting, transportation, and treatment."

In Forsyth v. Wells, 41 Pa. 291, 80 Am. Dec. 617, it was held: "Where there is a wrongful purpose or a wrongful negligence in the defendant, compensation for the real injury done is the purpose of all remedies; and, so long as we bear this in mind, we shall have but little difficulty in managing the form of action so as to secure fair results. If the defendant in this case was guilty of no intentional wrong, he ought not to have been charged with the value of the coal after he had been at the expense of mining it, but only with its value in place, and with such other damage to the land as his mining may have caused. Such would manifestly be the measure in trespass for mesne profits."

As such would have been the rule applied in measuring the damages of complainant, in case it had owned the property and the Portland Company had entered on the premises and conducted its mining operations under a voidable license or lease, it is clear, to my mind, the rights of complainant can rise no higher than the owner's rights have been, by the lease from the owner, transferred to it. How, then, can the interest of complainant in minerals taken by the Portland Company from the lots in question, in place in the ground, as measured by its leasehold interest, be estimated in a more equitable, just measure between the parties than on the basis of the customary royalties charged and received by it from all other operators, under its mining rules? This is the amount for which its rights in the property sold to others, and this is the price fixed by it to all persons desiring to operate a portion of the property as sublessees, by its mining rules. And, to my mind, if the Portland Company had entered upon the lots in question, as it did by the consent of the general manager of complainant, and extracted ore therefrom, as it did, but without the payment of the royalties reserved and decreed in this case, such royalties would honestly and justly measure the interest of complainant in the property in question, and would afford it full compensation for damages sustained. However, this amount has been paid in this case by the Portland Company and accepted by the complainant. Therefore, as no claim is made by complainant for damages to its leasehold interest in the property by negligent or unskillful mining operations conducted by the Portland Company in extracting the ore therefrom, I am of the opinion there can be no recovery in this case by complainant from defendants the Portland Company or Nicholson for damages for mining operations conducted and ore extracted by the Portland Company from lots 39, 46, and 47, as recommended by the master.

It follows, from what has been said, a decree will enter herein: (1) Dismissing the bill as to all defendants save the Portland Company and Frank Nicholson, as recommended by the master. (2) The validity of the lease between complainant and the Portland Company will be sustained by the decree, and the bill in this respect dismissed, as recommended by the master. (3) On the accounting of complainant with defendants the Portland Company and Frank Nicholson, a finding and decree will enter in favor of complainant against Frank Nicholson and the Portland Company for the sum of $2,835.30, and legal interest thereon from the date of the decree until paid, as and for the value of the air and steam wrongfully, by the direction of Nicholson, supplied by complainant to, and received by, the Portland Company free of charge, as recommended by the master. (4) It will be provided in said decree the complainant take nothing in its accounting with Nicholson and the Portland Company on its demand for damages by reason of the Portland Company entering upon mining lots Nos. 39, 46, and 47, and extracting ore therefrom. The recommendation of the master in this respect, under the proofs, being in my judgment without equity, is, therefore, not followed and approved. (5) In all other matters the bill will be dismissed as to defendants Nicholson and the Portland Company, and the costs of the suit, including reasonable compensation to the master, as may be agreed upon between the master and solicitors for the respective parties, or hereafter allowed by the court, shall be taxed and paid equally, one-half by complainant and one-half by defendants Nicholson and the Portland Company.

It is so ordered.