UNITED STATES of America, Plaintiff,

v.

KERR GIFFORD & CO., Inc., Defendant.

No. 2014.

United States District Court
D. Idaho, N. D.
Jan. 13, 1956.

772

Marion Callister, Asst. U. S. Atty., Boise, Idaho, for plaintiff.

Harry de Francq, Portland, Or., and Elam & Burke, Boise, Idaho, for defendant.

TAYLOR, District Judge.

At a pre-trial conference held on October 7, 1955, at Coeur d'Alene, Idaho, it was stipulated between Court and counsel that this action could be tried before the Court sitting without a jury at Boise, Idaho. The cause came on regularly for trial before this Court on November 14, 1955, at Boise, Idaho. Plaintiff voluntarily dismissed its second cause of action and the trial proceeded only as to the first cause of action. Oral and documentary evidence was introduced on behalf of the respective parties and at the conclusion thereof the Court took the matter under advisement. Counsel for the respective parties were granted leave to submit memorandums of authorities, which they have done, and which have been duly considered by the Court.

This action was brought by the United States of America based on a claim of the Commodity Credit Corporation, an agency and instrumentality of plaintiff, and it is alleged that during the period of October 17, 1951 to May 12, 1952 defendant purchased and received delivery from Boundary Grain and Feed, Inc., located at Bonners Ferry, Idaho and Copeland, Idaho, hereinafter referred to as Boundary, some 3,774,025 pounds of wheat, alleged to be property owned by or pledged to the plaintiff, or to be property covered by warehouse receipts held by plaintiff as owner or pledgee. Plaintiff further alleged that since Boundary was in a "short" position during said period, it was but a bailee of said wheat; that, therefore, it had no authority to sell the same, and that said property was converted to the use of the defendant by its purchase thereof.

Defendant corporation alleged that it paid market value for the wheat and acted in good faith in purchasing the same, in that it made said purchases prior to learning that Boundary was in a short position.

Jurisdiction over the parties and subject matter of this case is conferred

on this Court by 28 U.S.C.A. § 1345 and 15 U.S.C.A. § 714b(c).

The general rule is stated in 53 Am. Jur., Trover and Conversion, § 36, as follows:

"A person who purchases personal property from one not authorized to sell the same may be held liable for the conversion thereof, regardless of the fact that the purchaser was honestly mistaken, or acted innocently, in good faith, and without knowledge of the seller's right to make the sale. The rule is generally applied where, in addition to the act of purchasing the property, the purchaser takes possession of the goods, mixes them with his own property, holds them to his own use, refuses to surrender possession on demand, disposes of the goods to a third person by sale, lease, or bailment, or, in general, exercises ownership over the property purchased, in denial of the owner's rights. This is particularly true if such exercise of ownership continues after knowledge of the rights of the true owner."

■ In Federal Land Bank of Spokane v. McCloud, 52 Idaho 694, 20 P.2d 201, 204, the Supreme Court of Idaho declared that: "One who buys property must, at his peril, ascertain the ownership; and if he buys of one having no authority to sell, his taking possession in denial of the owner's right is a conversion." This statement of the law was subsequently quoted with approval in Klam v. Koppel, 63 Idaho 171, 118 P.2d 729. See also: E. E. Bolles Wooden-Ware Co. v. United States, 106 U.S. 432, 1 S.Ct. 398, 27 L.Ed. 230; Pine River Logging & Improvement Co. v. United States, 186 U.S. 279, 22 S.Ct. 920, 46 L.Ed. 1164.

The 84th Congress, however, in Public Law 43, 69 Stat. 65, approved May 23, 1955, amended the Commodity Credit Corporation Charter Act in order to protect innocent purchasers of fungible goods from claims of the Commodity Credit Corporation. Said act was amended by adding the following new section:

"'Sec. 19. Release of Innocent Purchasers of Converted Goods.—A buyer in the ordinary course of business of fungible goods heretofore or hereafter sold and physically delivered by a warehouseman or other dealer who was regularly engaged in the business of buying and selling such goods shall take or be deemed to have taken such goods free of any claim, existing or hereafter arising, by Commodity Credit Corporation, based on the want of authority in the seller to sell such goods, provided the buyer purchased such goods for value in good faith and did not know or have reason to know of any defect in the seller's authority to sell such goods.' To be entitled to relief under this section a buyer must assert as an affirmative defense and establish by a preponderance of the evidence the facts necessary to entitle him to such relief." 15 U.S.C.A. § 714p.

■ The evidence clearly shows that during the period all of the grain in question, to wit: 3,774,025 pounds of wheat, was purchased by and delivered to defendant, Boundary was in a short position and was disposing of grain owned by Commodity Credit Corporation and others. Under the circumstances Boundary did not have any right or authority to sell any part of said grain, and generally a purchaser thereof could be held liable for conversion unless relieved from such liability, e. g., as provided in § 19, supra.

■ In the instant case the defendant, in order to be relieved of liability, had the burden of proving by a preponderance of the evidence that the grain was sold and physically delivered, that it was purchased for value in good faith and that defendant did not know of any defect in Boundary's authority to sell said grain. It satisfactorily appears from the evidence that all of the

grain paid for by and delivered to defendant prior to April 29, 1952, was purchased and delivered for value, in good faith and without any knowledge by defendant of any defect in Boundary's authority to sell the same.

Consequently the only question left for this Court's determination is whether defendant converted six specific carloads of wheat, being cars MP 90527, PRR 570305, WP 16594, CBQ 15878, GN 29993 and GN 42579.

On April 29, 1955, Wayne Mills, then manager of Boundary, conferred with Thomas Kerr, president of Kerr Gifford & Co., Inc., and S. E. Mikkelson, vice president of the latter company, at the company's Portland, Oregon office. Mills informed said officers of Kerr Gifford & Co., Inc. that Boundary was in a short position and that it was necessary, if Boundary was to meet its obligations to Commodity Credit Corporation, for the former to buy wheat. Mikkelson assured Mills that Kerr Gifford & Co., Inc. could and would sell Boundary sufficient wheat to enable the latter to repay its obligations to Commodity Credit Corporation. This was the first time the defendant corporation knew or had reason to know that Boundary was in a short position and that it did not have authority to sell grain. Kerr and Mikkelson, however, did not subsequently make any effort to determine whether Boundary had in fact rectified its short position and did not advise its Spokane, Washington office of Boundary's situation.

The six carloads of wheat in question were ordered by the Spokane office of defendant corporation on April 28 and 29, 1952, but no money was paid to Boundary, or any of said cars accepted by defendant, until subsequent to April 29, 1952. On May 1, 1952, the Spokane office made advances on cars MP 90527, PRR 570305 and WP 16594, which had been previously ordered, and which were shipped by Boundary on April 29, 1952. These cars were subsequently delivered to defendant and then inspected, weighed, and unloaded. On May 1, 1952, the Spokane office made an advance on car CBQ 15878, shipped April 29, 1952; this car was later delivered to defendant, whereupon it was inspected, weighed and unloaded. Boundary shipped car GN 29993 on May 10, 1952, and car GN 42579 on May 12, 1952. Defendant subsequently made advances on the latter two cars, and inspected, weighed and unloaded them.

■ Defendant corporation thus made advances on, accepted delivery of and exercised dominion over the six carloads of wheat subsequent to the time the defendant was informed that Boundary was in a short position. The defendant corporation was not obligated to pay for or accept any of said cars of wheat at a time when it knew or should have known that Boundary was disposing of wheat which it had no authority to sell. The defendant corporation should and could have refused to accept and pay for any wheat after having knowledge of Boundary's short position.

Since the defendant was not obligated to accept or pay for said wheat after having such knowledge, it appears that defendant has not, as to the said six carloads, brought itself within the provisions of Public Law 43, supra, as amended, which affords relief to a buyer of fungible goods only when the buyer purchases " 'such goods for value in good faith and did not know or have reason to know of any defect in the seller's authority to sell such goods.' " Here the defendant had not paid out any money or accepted said wheat until subsequent to the time it had knowledge of a defect in Boundary's authority to sell.

■ The obvious purpose and intention of § 19 of said law is to protect a purchaser who has parted with his money and received the goods without knowledge of any defect in the seller's authority to sell. Notwithstanding the knowledge which the defendant corporation had, however, it accepted and paid for said six carloads of wheat.

It is the considered judgment of this Court, therefore, that as to said six carloads of wheat the defendant is liable for the conversion of the same, and that plaintiff is entitled to recover of and from the defendant Kerr Gifford & Co., Inc. the sum of $19,500.96, together with interest at the rate of six per cent per annum from and after May 29, 1952.

Counsel for plaintiff may prepare findings of fact, conclusions of law, and proposed judgment, serve copies thereof upon counsel for the defendant and submit the same to the Court for its approval.