## MARTIN et al. v. GROGAN–COCHRAN LUMBER CO.

### No. 4136.

Court of Civil Appeals of Texas. Beaumont.

May 6, 1943.

Geo. B. Darden, of Conroe, for appellant.

Pitts & Liles and Grogan & Grogan, all of Conroe, for appellee.

O'QUINN, Justice.

This is an action in trespass to try title, brought by appellants, J. B., Henry, Geo. L., J. W., and A. J. Martin, in the Ninth District Court of Montgomery County, against Grogan-Cochran Lumber Company, a corporation, for title to certain timber and for damages for the manufactured value of said timber, alleged to have been unlawfully cut and removed on about October 10, 1941, from 80 acres of land, a portion of the Hiram Rosson survey in Montgomery County, Texas, claimed by plaintiffs as the surviving heirs of their father, John Martin, deceased.

Defendant answered by general denial, plea of not guilty, and specially that on November 14, 1939, Mrs. J. G. Martin, a feme sole, the mother of plaintiffs, executed to it a timber deed conveying "all of the pine timber ten (10) in diameter and up at the time of cutting, standing and being on said land," and granting to defendant 18 months from the date of the conveyance in which to cut and remove the timber from the land. Defendant further answered that at the time of execution of said deed it was understood and agreed by and between plaintiffs and the said Mrs. J. G. Martin that she should have authority to convey said timber. It further answered that in the event there was no such special agreement, yet plaintiffs were estopped to deny the lack of authority to

convey said timber for in that, by their acts, words and deeds they acquiesced in the conveyance.

The timber was not cut within the time specified in the deed and Mrs. Martin, on April 29, 1941, executed an instrument extending the time for removal to November 14, 1941, in which plaintiffs by their acts acquiesced, and led defendant to believe that their mother did have such authority, hence plaintiffs are as a matter of equity estopped from asserting their cause of action.

Plaintiffs by supplemental petition filed certain special exceptions to defendant's answer, general denial, and specially denied that Mrs. Martin had authority to convey the timber, that they did not acquiesce in such conveyance and extension of time for the removal of the timber, and said they were never contacted as to the sale of the timber and further plead that defendant well knew that Mrs. Martin had only a life estate in the land and therefore could not execute a timber deed to said timber, or any extension of time for its removal, without a joinder of plaintiffs, and that they were never consulted relative to the sale of said timber, or as to an extension of time for its removal.

The case was tried to a jury. Before the pleadings were read, plaintiff, A. J. Martin, at his request, was dismissed as a party plaintiff from the suit. After the evidence was concluded, plaintiff, J. W. Martin, at his request, was dismissed as a party from the suit. When all remaining parties had rested, defendant filed motion for an instructed verdict, which was duly considered, and granted by the court, and accordingly rendered by the jury, and judgment entered, from which judgment appellants have brought this appeal.

Appellants, J. B. Martin, Henry Martin and George L. Martin, base their appeal upon two points:

(a) "The error of the court in instructing the jury to return a verdict in favor of defendant, and against J. B. Martin, Henry Martin, and Geo. L. Martin, plaintiffs, and entering judgment, because there was a disputed issue of fact as to whether defendant had actual knowledge and/or notice of plaintiffs' ownership in and to said timber and objections to cutting same."

(b) "The error of the court in instructing the jury to return a verdict in favor of defendant and against J. B., Henry and Geo. L. Martin, plaintiffs, and entering judgment, because Mrs. J. G. Martin, a feme sole, and grantor of defendants, only had a life estate in the 80 acres of land, and could not by law individually execute a deed to the timber, or more especially an extension agreement, as she had beforehand parted with title therein."

The proof showed that the tract of land, the 80 acres in question, was the separate property of John Martin, deceased, the father of the appellants, and the husband of Mrs. J. G. Martin. John Martin died intestate, and at the time of the trial, the sons, J. B. Martin owned 2/6ths, Henry Martin 1/6th, J. W. Martin 1/6th, Geo. L. Martin 1/6th, and A. J. Martin 1/6th undivided interest of the land and timber on same, subject to the 1/3rd life estate therein of their mother, Mrs. J. G. Martin. On November 14, 1939, Mrs. Martin sold the timber on the 80 acres of land to appellee, Grogan-Cochran Lumber Company. A. J. Martin, one of the co-owners, and a son of Mrs. J. G. Martin, testified that all of the plaintiffs knew of the sale of the timber to appellee. He testified that in November, 1939, his mother sold the timber "from the 80 acres of land to Grogan-Cochran Lumber Company; that the sale of the timber to Grogan-Cochran Lumber Company was talked over with his brothers * * * I talked to each of them in person." He further testified that the purpose of the sale was to build a house for his mother; that she wanted the timber off of it to build a house for her to live in. He further testified that outside of Henry it was agreeable with the rest of them; that they never could get an answer out of Henry; that Henry knew about it, but made no objections.

A. J. Martin testified that he talked to Henry Grogan (one of the mill owners) and that he (Grogan) sent Paul Buchanan to estimate the timber, and he (Grogan) made us an offer on it and the trade was made; that he, A. J. Martin and his wife were present at the office of Grogan-Cochran Lumber Company when the timber deed was executed by Mrs. Martin. He said "it was figured to build my mother a two room house, and he (Grogan) sent the lumber, windows, doors, nails, roofing, and everything to build the house"; that he made one trip to get a little that was lacking, that he, his brother George, and

maybe Buck to a small extent, helped build the house.

He further testified that the question of granting Grogan-Cochran further time in which to remove the timber from the land was discussed with him. His mother granted the proposed extension. He said that he did not want to prosecute the suit against Grogan-Cochran Lumber Company. He was asked:

"Q. Mr. Martin, I will ask you to state whether or not your brothers agreed before the timber deed was executed by your mother for her to sell the timber to get the lumber to build the house? A. Yes, sir, it was agreeable with Buck, George and Will. We talked it over, and I told mother she could sell the timber, and get enough out of it to build the house, and I would build it for her.

"Q. What was the main purpose in selling the timber? A. To get my mother a home."

George Martin, one of the brothers, pointed out the lines of the 80 acre tract to Buchanan the timber estimator in making the sale of the timber.

H. N. Grogan, member of Grogan-Cochran Lumber Company, testified that some five or more years before they had brought the merchantable timber on the land and cut same, that Mrs. Martin came to see him to sell him the timber so she could build a house; that he had Paul Buchanan estimate it, and a price was agreed upon for the timber; that the bill for the lumber and building supplies was slightly in excess of the value of the timber, and that Mrs. Martin gave him her note for the balance, that later Mrs. Martin executed an extension agreement for time in cutting the timber for a consideration of $50. That the note was paid. He testified:

"Q. Uncle Henry, I will ask you to state to the court and jury whether or not at the time you accepted the deed to the timber, which was executed by Mrs. Martin, did you do so with the honest belief she owned the timber and was selling it to you in good faith? A. I did.

"Q. And you accepted it believing she did own the timber? A. I did."

On cross-examination by Mr. Darden, counsel for appellant:

"Q. Mr. Grogan, you mean to tell the jury that on a representation from a woman that she was the sole owner of that land, that without investigating the title or checking the record, that you considered she owned it and bought it on her word? A. I did for the reason I thought I was helping her to that extent. She wanted a place to live, and I did it on a Good Samaritan business and nothing else.

"Q. And Mr. Grogan, you tell the jury that on her representation to you, you took her word for it and believed Mrs. Martin owned the timber? A. I did.

"Q. I believe you stated Mr. Dock Martin was with his mother at the time the timber contract was executed? A. He was.

"Q. At the time she signed the deed? A. Yes, sir."

(The record discloses that Dock Martin and A. J. Martin is the same person— one of her sons.)

Paul Buchanan, a brother-in-law of A. J. Martin, testified that A. J. Martin told him that his (Martin's) mother wanted to build a house and they would have to sell some timber, and asked his advice. He told A. J. to go to see Mr. Grogan, or one of the nearest mills.

J. B. Martin, one of the appellants, in response to a question asked him by his counsel answered that he knew of the timber deed his mother executed to appellee.

The record discloses that the deed from Mrs. Martin to her son, appellant, J. B. Martin, conveying to him the land in question was intended to be and was a mortgage on the land to secure a debt she owed to him for $250 she had borrowed from him. The record discloses that he, J. B. Martin, wrote, signed and delivered to her a letter stating he would deed the property back to her if she paid the note (she had executed to him when she borrowed the $250, and which note was payable in two years) within two years. At the time Grogan-Cochran Lumber Company cut the timber the time, two years, was not up.

As this is a penalty suit (suit for the manufactured value of the timber) we have stated rather fully the facts. There is no alternative plea for the stumpage value of the timber. It manifestly appears that each and all of the sons, with the possible exception of Henry, who denies any knowledge, knew of the sale of the timber by Mrs. Martin to secure money with which to build her a two room house in which to live; that the house was built

for that purpose, most of the sons assisting in the building, that she actually lived in the house, that the money received by her for the purpose of building the house was paid for lumber, roofing, nails and such other things as was necessary, and the house was built on land belonging to all of the sons. We think the record discloses that Henry was fully aware of the proposed sale by Mrs. Martin of the timber and its purpose, though he took no part in assisting in erecting the house. Under the pleadings of appellants, if they were not entitled to a judgment for the manufactured value of the timber, then they were not entitled to judgment for the stumpage value because there was no such allegation either plead or prayed for. No criminal intent is shown in the sale of the timber, nor was she in any sense a trespasser in authorizing its removal from the land. The whole transaction, under the facts, shows her acting in good faith, and her acts were either approved by, or acquiesced in by all of the sons, unless possibly Henry, and he having knowledge of her desires and purpose to use the timber, while not directly agreeing to same, did not actually object but stood by while the house was being built without making known his opposition. The case of Kirby Lumber Co. v. Temple Lumber Co., 125 Tex. 284, 83 S.W.2d 638, 646, cited by appellants as directly supporting their contention, in our opinion, does not support their contention. No attempt, whatever, was made by Mrs. Martin, A. J. Martin, or J. W. Martin, to oust the appellants, or to make claim adversely to them. Judge Critz in his opinion in Kirby Lumber Co. v. Temple Lumber Co. says: "Notwithstanding the above rule, manufactured value will not be applied in regard to timber cut and appropriated where the trespass is the result of inadvertence or mistake, or where the person committing the wrong acted in good faith, and without any intention of committing a wrongful act. Of course the act must not be in reckless disregard of the rights of the owners, but the act must be willful and the wrong intentional, or committed under such circumstances that the law will impute malice. (citing cases)." None of these elements that justify a penalty are found in the evidence in this case.

When we come to examine this record we are compelled to the conclusion that in cutting this timber Grogan-Cochran Lumber Company acted in good faith, and without malice, actual or implied. The undisputed record shows that H. N. Grogan, at the time he purchased the timber believed that he was purchasing from the legal owners. He paid an adequate price for the timber as far as the record discloses. The co-owners who acquiesced in, ratified, and confirmed the sale visited no waste upon their co-owners who here seek the manufactured value of the lumber. They took the consideration received and used it for the purpose of building a house for the mother of all the sons, on the land of said sons, and some of them actively assisted in the erection of the building. The mother owned a life estate in the timber, and she used that for building the little house to live in on the land just as she would have used the timber if made into rails for repairing a fence around the premises, or the logs to build necessary outhouses on the premises. They asserted no adverse title to the timber nor did they apply the proceeds to their own particular use. The timber was used to improve the estate just as much as timber, as above said, used by the owner of a life estate for fencing or for building a log barn or log house, or just as the life estate owner chose.

█ In the instant case, the cutting was not a trespass. Under appellants' own contentions the mother owned a 1/3rd life estate in the property and A. J. Martin and J. W. Martin each owned an undivided 1/6th interest. There can be no question but that these co-owners sold to appellee the timber in question, and for that reason appellants were not entitled to the relief for which they plead, and the court, therefore, properly directed a verdict for appellee.

Appellants' second point is that the court erred in directing a verdict against them and in favor of defendant because Mrs. J. G. Martin, a feme sole, and grantor of defendants, "only had a life estate in the 80 acres of land, and could not by law individually execute a deed to the timber, or more especially an extension agreement, as she had beforehand parted with title thereto."

█ We think the second point does not fully or correctly reflect the facts disclosed by the record. Mrs. Martin's interest was a life estate. J. W. Martin's and A. J. Martin's interest was in the fee.

Mrs. Martin had not parted with title as alleged. She had merely given her son, J. B. Martin, a deed, and at the same time he signed and delivered to her a letter stating that the deed that she had given him was a conditional conveyance given to secure a $250 loan that he had made to her. When she executed the deed to him for the land he wrote and delivered to her a letter stating that the deed was a conditional conveyance for the purpose of securing the payment of the note given by her for the loaned money and if she paid the note within two years from the date of the deed he would reconvey to her the land. That classed the deed as a mortgage given to secure the payment of the note, and was not intended and in fact was not a conveyance of the fee to the land. Under the law a life tenant may take timber from the realty for the purpose of making needed repairs such as repairing fences. For the same reason the owner of a life estate may be permitted to use timber on the land for the erection of log cribs or even a log house in which to live. If the timber be exchanged for lumber and building materials used for the purpose of erecting a house upon a common property, we can see no grounds of distinction in the application of this rule here.

The judgment of the lower court is affirmed.

COMBS, J., concurs.