## WOODEN-WARE COMPANY *v.* UNITED STATES.

Where the plaintiff, in an action for timber cut and carried away from his land, recovers damages, the rule for assessing them against the defendant is: 1. Where he is a wilful trespasser, the full value of the property at the time and place of demand, or of suit brought, with no deduction for his labor and expense. 2. Where he is an unintentional or mistaken trespasser, or an innocent vendee from such trespasser, the value at the time of conversion, less the amount which he and his vendor have added to its value. 3. Where he is a purchaser without notice of wrong from a wilful trespasser, the value at the time of such purchase.

ERROR to the Circuit Court of the United States for the Eastern District of Wisconsin.

The facts are stated in the opinion of the court.

*Mr. Samuel D. Hastings, Jr.,* for the plaintiff in error.
*Mr. Assistant Attorney-General Maury* for the United States.

MR. JUSTICE MILLER delivered the opinion of the court.

This is a writ of error, founded on a certificate of division of opinion between the judges of the Circuit Court.

The facts, as certified, out of which this difference of opinion arose appear in an action in the nature of trover, brought by the United States for the value of two hundred and forty-two cords of ash timber, or wood suitable for manufacturing purposes, cut and removed from that part of the public lands known as the reservation of the Oneida tribe of Indians, in the State of Wisconsin. This timber was knowingly and wrongfully taken from the land by Indians, and carried by them some distance to the town of Depere, and there sold to the E. E. Bolles Wooden-ware Company, the defendant, which was not chargeable with any intentional wrong or misconduct or bad faith in the purchase.

The timber on the ground, after it was felled, was worth twenty-five cents per cord, or $60.71 for the whole, and at the town of Depere, where defendant bought and received it, three dollars and fifty cents per cord, or $850 for the whole quantity. The question on which the judges divided was whether the liability of the defendant should be measured by the first or the last of these valuations.

It was the opinion of the circuit judge that the latter was the proper rule of damages, and judgment was rendered against the defendant for that sum.

We cannot follow counsel for the plaintiff in error through the examination of all the cases, both in England and this country, which his commendable research has enabled him to place upon the brief. In the English courts the decisions have in the main grown out of coal taken from the mine, and in such cases the principle seems to be established in those courts, that when suit is brought for the value of the coal so taken, and it has been the result of an honest mistake as to the true ownership of the mine, and the taking was not a wilful trespass, the rule of damages is the value of the coal as it was in the mine before it was disturbed, and not its value when dug out and delivered at the mouth of the mine. *Martin* v. *Porter*, 5 Mee. & W. 351; *Morgan* v. *Powell*, 3 Ad. & E. N. S. 278; *Wood* v. *Morewood*, 3 id. 440; *Hilton* v. *Woods*, Law Rep. 4 Eq. 432; *Jegon* v. *Vivian*, Law Rep. 6 Ch. App. 742.

The doctrine of the English courts on this subject is probably as well stated by Lord Hatherley in the House of Lords, in

the case of *Livingstone* v. *Rawyards Coal Co.*, 5 App. Cas. 25, as anywhere else.   He said: "There is no doubt that if a man furtively, and in bad faith, robs his neighbor of his property, and because it is underground is probably for some little time not detected, the court of equity in this country will struggle, or, I would rather say, will assert its authority to punish the fraud by fixing the person with the value of the whole of the property which he has so furtively taken, and making him no allowance in respect of what he has so done, as would have been justly made to him if the parties had been working by agreement."   But "when once we arrive at the fact that an inadvertence has been the cause of the misfortune, then the simple course is to make every just allowance for outlay on the part of the person who has so acquired the property, and to give back to the owner, so far as is possible under the circumstances of the case, the full value of that which cannot be restored to him *in specie*."

There seems to us to be no doubt that in the case of a wilful trespass the rule as stated above is the law of damages both in England and in this country, though in some of the State courts the milder rule has been applied even in this class of cases.   Such are some that are cited from Wisconsin.   *Weymouth* v. *Chicago & Northwestern Railway Co.*, 17 Wis. 550; *Single* v. *Schneider*, 24 id. 299.

On the other hand, the weight of authority in this country as well as in England favors the doctrine that where the trespass is the result of inadvertence or mistake, and the wrong was not intentional, the value of the property when first taken must govern; or if the conversion sued for was after value had been added to it by the work of the defendant, he should be credited with this addition.

*Winchester* v. *Craig*, 33 Mich. 205, contains a full examination of the authorities on the point.   *Heard* v. *James*, 49 Miss. 236; *Baker* v. *Wheeler*, 8 Wend. (N. Y.) 505; *Baldwin* v. *Porter*, 12 Conn. 484.

While these principles are sufficient to enable us to fix a measure of damages in both classes of torts where the original trespasser is defendant, there remains a third class, where a purchaser from him is sued, as in this case, for the conversion

of the property to his own use.   In such case, if the first taker
of the property were guilty of no wilful wrong, the rule can in
no case be more stringent against the defendant who purchased
of him than against his vendor.

But the case before us is one where, by reason of the wilful
wrong of the party who committed the trespass, he was liable,
under the rule we have supposed to be established, for the value
of the timber at Depere the moment before he sold it, and the
question to be decided is whether the defendant who purchased
it then with no notice that the property belonged to the United
States, and with no intention to do wrong, must respond by the
same rule of damages as his vendor should if he had been sued.

It seems to us that he must.   The timber at all stages of the
conversion was the property of plaintiff.   Its purchase by de-
fendant did not divest the title nor the right of possession.
The recovery of any sum whatever is based upon that proposi-
tion.   This right, at the moment preceding the purchase by
defendant at Depere, was perfect, with no right in any one to
set up a claim for work and labor bestowed on it by the wrong-
doer.   It is also plain that by purchase from the wrong-doer
defendant did not acquire any better title to the property than
his vendor had.   It is not a case where an innocent purchaser
can defend himself under that plea.   If it were, he would be
liable to no damages at all, and no recovery could be had.   On
the contrary, it is a case to which the doctrine of *caveat emptor*
applies, and hence the right of recovery in plaintiff.

On what ground, then, can it be maintained that the right to
recover against him should not be just what it was against his
vendor the moment before he interfered and acquired posses-
sion?   If the case were one which concerned additional value
placed upon the property by the work or labor of the defend-
ant after he had purchased, the same rule might be applied as
in case of the inadvertent trespasser.

But here he has added nothing to its value.   He acquired
possession of property of the United States at Depere, which,
at that place, and in its then condition, is worth $850, and he
wants to satisfy the claim of the government by the payment
of $60.   He founds his right to do this, not on the ground that
anything *he* has added to the property has increased its value

by the amount of the difference between these two sums, but on the proposition that in purchasing the property he purchased of the wrong-doer a right to deduct what the labor of the latter had added to its value.

If, as in the case of an unintentional trespasser, such right existed, of course defendant would have bought it and stood in his shoes; but as in the present case, of an intentional trespasser, who had no such right to sell, the defendant could purchase none.

Such is the distinction taken in the Roman law as stated in the Institutes of Justinian, Lib. II. Tit. I. sect. 34.

After speaking of a painting by one man on the tablet of another, and holding it to be absurd that the work of an Appelles or Parrhasius should go without compensation to the owner of a worthless tablet, if the painter had possession fairly, he says, as translated by Dr. Cooper: "But if he, *or any other*, shall have taken away the tablet feloniously, it is evident the owner may prosecute by action of theft."

The case of *Nesbitt* v. *St. Paul Lumber Co.*, 21 Minn. 491, is directly in point here. The Supreme Court of Minnesota says: "The defendant claims that because they (the logs) were enhanced in value by the labor of the original wrong-doer in cutting them, and the expense of transporting them to Anoka, the plaintiff is not entitled to recover the enhanced value; that is, that he is not entitled to recover the full value at the time and place of conversion." That was a case, like this, where the defendant was the innocent purchaser of the logs from the wilful wrong-doer, and where, as in this case, the transportation of them to a market was the largest item in their value at the time of conversion by defendant; but the court overruled the proposition and affirmed a judgment for the value at Anoka, the place of sale.

To establish any other principle in such a case as this would be very disastrous to the interest of the public in the immense forest lands of the government. It has long been a matter of complaint that the depredations upon these lands are rapidly destroying the finest forests in the world. Unlike the individual owner, who, by fencing and vigilant attention, can protect his valuable trees, the government has no adequate defence

against this great evil. Its liberality in allowing trees to be cut on its land for mining, agricultural, and other specified uses has been used to screen the lawless depredator who destroys and sells for profit.

To hold that when the government finds its own property in hands but one remove from these wilful trespassers, and asserts its right to such property by the slow processes of the law, the holder can set up a claim for the value which has been added to the property by the guilty party in the act of cutting down the trees and removing the timber, is to give encouragement and reward to the wrong-doer, by providing a safe market for what he has stolen and compensation for the labor he has been compelled to do to make his theft effectual and profitable.

We concur with the circuit judge in this case, and the judgment of the Circuit Court is

*Affirmed.*