## THE J. OSWALD BOYD.
### No. 15880.

District Court, E. D. Michigan, S. D.
Dec. 21, 1943.

Goetz & Goetz, of Detroit, Mich., for libelant.

Milburn & Semmes and Foster, Yost & Lott, all of Detroit, Mich., for respondent Great Lakes Steel Corporation.

TUTTLE, District Judge.

This cause comes before the Court upon exceptions filed by respondent to the report of Donald L. Quaife, Special Master, pursuant to order of reference directing him to take testimony upon and determine the damages to be recovered by libelant as a result of the conversion of the oil tanker Boyd. After full consideration of the arguments and briefs in support of and in opposition to the exceptions, this Court is of the opinion that the findings and conclusions of the Master are correct and his report will accordingly be confirmed. In view of the fact that it appears that the question of damages presented by the case has not been the subject of any previous reported case in admiralty, a brief statement of the facts of the case and the legal conclusions and the basis for arriving at them should be made.

This case was commenced by a libel filed by the owner of an undivided one half interest in the vessel Boyd to recover possession of it. In 1936, the Boyd was wrecked in a storm off Simmons Reef in the northern part of Lake Michigan, and (as the court has previously held) was abandoned by the insurance underwriters who succeeded to the interest of the original owners. It was raised, after many days' work, by libelant and one McLeod, who was associated with him in a joint adventure the object of which was to raise the boat and divide between them the fruits of the enterprise. After raising the vessel, they towed it to Detour, Michigan, where they grounded it on the bottom of the St. Marys River in front of their homes. This Court has previously found that each of them at that time acquired an undivided one half interest in the vessel. The boat lay in this condition for several years, during which period the owners on several occasions stripped off and sold metal or parts from the boat. There was some discussion between the owners concerning a proposal of libelant to take the front half of the boat as his share and to convert it into a scow to be used in the salvage business, which he contemplated entering. However, no final agreement of this sort was ever consummated; and at the time of the events here under consideration the ownership of libelant remained an undivided one half interest.

In 1939, McLeod transferred his one half interest in the vessel to one Lewis. During the late spring of 1942, the vessel was raised and disposed of by two men, Strait and Robinson, who had shortly before purchased the one half interest of Lewis for $1,500. After raising it, Strait and Robinson delivered the boat to the Woodmere Scrap Iron and Metal Company, pursuant to a contract under which the former were to get approximately $6,500 for the entire interest in the vessel. Woodmere arranged to sell the vessel for scrap purposes to the respondent, Great Lakes Steel Corporation, through the Grant Iron and Metal Company, a dealer in scrap iron, for the net sum of $9,929.57, from which Grant received a commission from Woodmere of $723, said commission being based upon a rate of $1 per ton. The Grant Company, however, acted as a principal when dealing with Great Lakes and furnished it with a guarantee of title.

Libelant, who was then engaged in diving work in Philadelphia, Pennsylvania, upon learning that the Boyd was being towed to Detroit for scrapping purposes, came to Detroit, filed this libel and had the vessel attached while it was at the dock of the Great Lakes Steel Corporation. Thereafter, the respondent Great Lakes entered into a stipulation for value with libelant, and filed a bond with this court for $5,000 to cover the payment of any damages to libelant found by this court, and thereby obtained a release of the attachment, which enabled it to complete the scrapping operations.

Beginning with Strait and Robinson, the successive owners of the one half interest obtained from Lewis began to deal with the vessel as if they owned the whole title to it. The court has found that Strait and Robinson in raising and disposing of the Boyd were guilty of wilful conversion as

to the one half interest of libelant, which the latter never disposed of in any way. On the other hand, until the filing of this libel, Great Lakes was innocent of any claim of libelant to part ownership in the vessel. In raising the boat, Strait and Robinson claim to have expended approximately $3,000, and, while the exact amount has not been adequately accounted for, no doubt a considerable amount of money was spent. Immediately after raising the vessel, Strait and Robinson moored it at the nearby Watson's Dock, in which place and condition it remained until the purchase by Great Lakes, no additional value having been imparted to it in the interim after the raising.

To complete the review of the facts, it is to be noted that in the year previous to the raising and selling of the vessel to Great Lakes, libelant had offered to sell to Lewis his interest for $1,250 cash, being motivated in part by the fact that he was at a distance and unable to adequately look after his interest in the vessel.

The Master found that the fair market value of libelant's half interest in the vessel in its condition as it lay on the river bottom at Detour, Michigan, immediately prior to the raising operations, was $1,500, and that its value at the time of the sale to Great Lakes was $4,603.28, representing the price actually paid by Great Lakes minus the commission received by the Grant Iron and Metal Company. (It appears that if libelant had been in position to dispose of the vessel to Great Lakes, it would have been necessary for him to deal through some such concern as Grant.) The Master further held that the libelant was entitled to recover the increased value of the vessel as of the time of the sale to Great Lakes, but that any further increase in its value resulting from the efforts and expenditures of Great Lakes thereafter could not be recovered. Respondent attacks this conclusion on the ground that it is inequitable and unjust, not only giving libelant greater compensation than his actual damages but at the same time inflicting punitive damages upon respondent, an innocent party. This Court is of the opinion and holds that the damages allowed by the Master are equitable and that from the date of filing of the libel respondent was not an innocent party. Both of these claims made by libelant will now be further discussed.

■ The rule of damages in the common law conversion and trover cases is admittedly in accordance with the Master's holding. In such cases, where the suit is brought against the original converter who has increased the value of the property by his efforts and expenditures subsequent to the conversion, the decision as to whether the owner can recover the original or augmented value is dependent upon whether the conversion was innocent or wilful. Kirby Lumber Co. v. Temple Lumber Co., 125 Tex. 284, 83 S.W.2d 638; Anderson v. Besser, 131 Mich. 481, 91 N.W. 737; Grant v. Fletcher, D.C.Mich., 283 F. 243; C.J., "Trover and Conversion", Sec. 253 (65 C.J. 140). If wilful, the owner is permitted to recover the enhanced value of the property. The ground for allowing such recovery is that to permit such a person to receive credit for his efforts or expenditures would be to enable him to profit by his own wrong and furnish encouragement and reward to the stealing of property. On the other hand, if the conversion was innocent, the owner can recover only the original value of the property.

■ Where, however, suit for trover or conversion is brought against an innocent purchaser from a wilful converter, an additional element is present which causes difficulty. However, the overwhelming weight of authority represented by many carefully considered cases from a number of jurisdictions is to the effect that the owner is entitled to recover as of the value of the property at the time and place of sale to the innocent purchaser, which is the same measure of recovery as would be applied if the suit were brought against the original converter. Restatement of Law of Torts, Sec. 927, Comment d; Bolles Wooden Ware Co. v. United States, 106 U.S. 432, 1 S.Ct. 398, 27 L.Ed. 230; Tuttle v. White, 46 Mich. 485, 9 N.W. 528, 41 Am.Rep. 175; Watkins v. Siler Logging Co., 9 Wash.2d 703, 116 P.2d 315; Glaspy v. Cabot, 135 Mass. 435; Hoxsie v. Empire Lumber Co., 41 Minn. 548, 43 N.W. 476; Silsbury v. McCoon, 3 N.Y. 379, 53 Am.Dec. 307; Annotation, 80 A.L.R. 613, and cases cited therein; 1 C.J.S. p. 422, Accession, § 7b(2). Contra, Lake Shore, etc., R. Co. v. Hutchins, 37 Ohio St. 282. The innocent purchaser, however, receives credit for any increase in the value of the property resulting from his own efforts or expenditures. Tuttle v. White, supra; Fisher v. Brown, 6 Cir., 70 F. 570.

■ Diligent search of counsel has failed to uncover a single reported admiral-

ty case involving the question here presented of the measure of damages in a conversion action in admiralty. The question is accordingly presented of whether an admiralty court should follow a different rule from that adopted by practically all the jurisdictions which have passed upon the question at common law. Respondent strenuously urges that admiralty courts in reaching their decisions follow principles of equity and natural justice and are not bound by the strict rules of the common law. The premise stated by respondent is in exact accord with this court's understanding of the principles of admiralty. See Benedict on Admiralty, Vol. 1, p. 148; Vol. 2, p. 30. However, the Court does not agree with the conclusion reached by counsel that the application in this case of the rule applied in the common law tort cases results in inequity or injustice. Let us look at the equities of this case. The respondent urges that the libelant should recover only the value of one half of the ship as it lay on the bottom of the river at Detour. If that should happen, the respondent, Great Lakes Steel Corporation, would then be permitted to recover as against its vendor, the Grant Iron & Metal Company, a financially responsible corporation, only that same amount. See Williston on Contracts, Sec. 1396. The one half of this ship belonging to libelant was wrongfully taken by Lewis and passed through the claimed ownership of Strait and Robinson, Woodmere, and Grant Iron and Metal Company, which latter company sold to the respondent Great Lakes Steel Corporation. Each one of these four parties made a net profit on this one half of the ship which they did not own. Such a decision would leave each one of these four parties, some of whom clearly knew they did not have good title and were acting in bad faith, to retain these ill-gotten profits. On the other hand, the findings and conclusions of the Master would, in substance, simply require the respondent, Great Lakes Steel Corporation, to pay to the libelant the amount which it had agreed to pay the Grant Iron and Metal Company for this one half of the ship which they did not own. That seems like clear equity and justice. The respondent Great Lakes Steel Corporation loses nothing by such a decision. It was within its power to have withheld payment for the one half which libelant claimed to own until this case had been decided. If it preferred to rely on the responsibility of the Grant Iron and Metal Company from whom it had purchased and promptly pay in full, as it did, that was its right. Now that the case has been decided, it can recover all that it paid to the Grant Iron and Metal Company for the one half that the Grant Iron and Metal Company did not own. Such a decision leaves it for the innocent purchasers all along the line to recover from those who sold to them without title. The final result is complete justice. No one has been wronged. A decision which wrongs no one is equity if it does not violate any statute or law. No statute or decision has been cited which suggests or holds that an admiralty court should not enter such a decree.

■ The above analysis demonstrates clearly that the application of the general rule adopted by the common law courts to this case is equitable, and also that the rule itself is equitable. Moreover, a reading of the trover and conversion cases indicates that the courts therein have based their adoption of the principle upon broad considerations of equity and justice rather than upon any technical rules of the common law. Finally, in the case at bar, there is an additional factor not present in most of those cases, which lends further support to the conclusion that the libelant's recovery herein should be based upon the value of the property at the time respondent purchased it. The record shows that the respondent, although making the deal to purchase the vessel prior to learning of libelant's claim, did not pay over any portion of the consideration for the purchase until after it had been served with notice of this libel. Respondent was, therefore, in position to protect itself, as it did not have to make payment to its vendor until the rights of libelant were adjudicated. If it chose to make such payment after notice of libelant's claim of an interest in the subject matter of the sale, it must be held to have done so at its peril. The decisions are unanimous to the effect that one is not in the position of a bona fide purchaser unless he not only makes the contract to purchase but also pays the consideration therefor prior to notice of the adverse claim. 8 C. J. 1148, 11 C.J.S. page 388 (Title, Bona Fide Purchaser); The Nancy Dell, D.C., 14 F. 744; See Restatement of Restitution, Sec. 172.

■■ The Master used as the basis for fixing the market value of the property at the time of the sale to the respondent the

actual sales price agreed to between respondent and its vendor. Since this sale was between a willing buyer and a willing seller, the Master's holding that this represented the best evidence of the value at that point was correct. See Hoffman v. Chamberlain, 40 N.J.Eq. 663, 5 A. 150, 53 Am.Rep. 783. The Master deducted from the price paid by Great Lakes the commission received by the Grant Company upon the sale. This Court is not called upon to decide whether or not in arriving at fair market value based upon an agreed selling price a commission upon the sale should be deducted, because libelant makes no contrary claim and, in fact, in his computation of damages himself makes this deduction. The holding of the Master that libelant was not entitled to the enhanced value of the vessel resulting from the activities of respondent in towing it to Detroit is also approved. These expenditures were incurred prior to any notice to respondent as to libelant's interest in the vessel, and respondent is in the position of an innocent purchaser so far as those expenses and the resulting increase in value are concerned.

The finding of the Master which is confirmed and approved by this Court is that libelant is entitled to recover the fair market value of the Boyd as it lay moored to Watson's Dock in the St. Marys River after it had been raised and at the time the executory contract to purchase was entered into by respondent.

This Court will enter an order confirming the report of the Special Master and a decree awarding damages to libelant in the amount of $4,603.28, with interest at 5% from the date of its entry, with costs to be taxed in favor of libelant under the rule.