305 P.2d 314

Dorothy Rorrison RINGELE, Plaintiff-Appellant,

v.

J. W. TERTELING and N. L. Terteling, co-partners doing business under the firm name and style of J. A. Terteling and Sons, Defendants-Respondents.

No. 8259.

Supreme Court of Idaho.

Feb. 28, 1956.

On Rehearing Dec. 20, 1956.

E. G. Elliott, James H. Hawley, Boise, for appellant.

Sherman F. Furey, Jr., U. S. Dist. Atty., Boise, Roger P. Marquis, Washington, D. C., amici curiæ, at rehearing.

Donart & Donart, Weiser, for respondents.

PORTER, Justice.

By her second amended complaint, appellant alleges substantially as follows: That at all times mentioned therein up to May 6, 1943, appellant was the owner of and in possession of Lot 13 of Jerome's Addition to Mountain Home, Idaho. That between the dates of November 1, 1942, and May 6, 1943, respondents willfully trespassed upon said land and took and removed therefrom 110,000 cubic yards of appellant's rock, gravel and sand which were then in place upon said premises. That said rock, gravel and sand were

severed from said land without appellant's consent and sold by respondents to the War Department of the United States Government for the sum of $227,700 which said sum was paid to respondents by said War Department as and for the purchase price of said property; and that respondents thereby became indebted to appellant in said sum. That appellant brings action in assumpsit upon said contractual indebtedness and hereby waives all right of action for any tort above set forth. Appellant prays judgment for $227,700 with interest thereon.

By way of second amended answer to appellant's second amended complaint, respondents deny generally the allegations of said second amended complaint. For a first separate defense and answer, respondents allege that in harmony with the "First War Powers Act of 1941", 50 U.S. C.A.Appendix, § 601 et seq., and Executive Order No. 9001, 50 U.S.C.A.Appendix, § 611 note, authorizing and directing the building of airports by the War Department, respondents entered into a written contract with the War Department by the terms of which, among other things, respondents agreed to build and construct an airport at a point approximately 14 miles south of Mountain Home, Idaho. That the removal of said rock, gravel and sand was in pursuance of and under the terms of said contract and that at all times the respondents were acting as the agents, servants and employees of the Government of the United States. And that all materials extracted by respondents from said land were taken for the use and benefit of the Government of the United States in building and constructing said airport.

For a second affirmative defense, respondents allege that the Government of the United States of America filed an action to condemn said land on May 6, 1943, and subsequently acquired title thereto in such condemnation proceedings wherein the compensation therefor was fixed at $125.

Appellant demurred to respondents' first and second affirmative defenses but such demurrer was overruled. At the trial of the cause most of the facts were stipulated including the execution of the contract between the War Department and respondents, in evidence as Plaintiff's Exhibit 1. The trial court entered findings of fact and conclusions of law favorable to respondents and entered judgment thereon for respondents. From such judgment appellant prosecutes this appeal.

By her assignments of error, appellant particularly challenges the affirmative defenses of respondents. Irrespective of the merits of such affirmative defenses, the fundamental weakness of appellant's case lies in the failure of the proof to sustain the theory upon which appellant seeks to recover.

The contract between the War Department and respondents is voluminous, but

in respect to the rock, gravel and sand in issue, it contains, under Specification No. 698–398 special conditions at SC–7, the following material provisions:

"Work to be done.—The work to be done under these specifications consists of furnishing all the necessary equipment, labor and materials, except such materials as herein specified to be furnished by the Government, * * *."

"Government furnished materials and/or equipment.—The materials and equipment entering into the construction under this contract which are not to be procured by the contractor are as follows for each part of this contract.

* * * * * *

"(2) Gravel pit site.—The Government will furnish without cost to the contractor, a gravel pit site, which will be designated by the contracting officer, in the S.W.¼, Sec. 23, T. 3 S., R. 6 E.B.M., as provided for in the technical provisions of these specifications."

The contract further contains under "Section II, Production and Stockpiling of Aggregate", the following provisions:

"2–01. Scope.—The work to be done under this section includes the furnishing of all materials and equipment and performing all labor necessary to furnish, deliver and stockpile the concrete aggregate, for cantonment structures, and screenings in accordance with these specifications and as otherwise directed.

"2–02. General.—The Government will furnish without cost to the contractor, gravel pit sites in the following locations:

"All of lots * * * 13 * * * lying south and west of Oregon Short line railroad right-of-way, the above in section 23, Township 3 south, range 6 east, Boise Meridian."

"2–11. Measurement and payment. —The quantity of the various aggregates to be paid for will be the number of cubic yards of aggregates produced and stockpiled in accordance with the specifications. The quantity to be paid for will be the number of cubic yards determined by measurement in railroad cars at the point of loading."

Lot 13 contains approximately 4 acres, and is a part of the approximately 138 acres designated as a gravel pit under the terms of the contract, Exhibit 1. On or about the first of November, 1942, the Corps of Army Engineers, without the knowledge or consent of the appellant, went upon and explored such Lot 13 and found gravel therein suitable for construction purposes at the Mouutain Home Airbase. They then and there staked out said ground for such purposes and desig-

nated Lot 13 as one of the lots from which gravel should be taken for such construction purposes.

On or about December 29, 1942, respondents, pursuant to the terms of the contract, Exhibit 1, entered upon such Lot 13 and severed, removed, processed and transported from such Lot 13, 110,000 cubic yards of gravel and delivered the same to the United States Government at the Mountain Home Airbase, approximately 14 miles away as provided in said contract. Neither the Government of the United States nor respondents procured any title to Lot 13 or the gravel thereon prior to the removal of such gravel. The evidence of appellant shows that respondents were paid by the Government of the United States in connection with the gravel removed from Lot 13 in an amount in excess of the $227,700 prayed for in the second amended complaint.

■ By her second amended complaint, appellant waived the tort and elected to sue in assumpsit for money had and received by respondents for the use and benefit of appellant in the sum of $227,700 allegedly paid by the Government to respondents as the purchase price of the gravel. The evidence supports Finding of Fact No. 12 of the trial court reading as follows:

"That no part of said gravel so removed from said Lot Thirteen was sold by the defendants to the Government of the United States; that the compensation received by the defendants from the Government of the United States under the terms of the contract hereinbefore mentioned was paid to the defendants for servicing, processing and extracting said gravel from said gravel pit and placing the same in position as a part of the construction of said air base."

It thus appears that there was no sale of any gravel by respondents to the Federal Government and that no money was had and received by respondents for the benefit of appellant by virtue of any such alleged sale. Irrespective of the legal issue as to the right of appellant to recover for money had and received in the event of a sale, the facts herein preclude a recovery by appellant upon her theory and under her evidence.

Unless one of the affirmative defenses is good, appellant would be entitled to recover in this case and her measure of damages would be either the value of the gravel in place or the value of the gravel in the hands of respondents dependent upon the circumstances connected with the original trespass. However, appellant neither pleaded nor proved or offered to prove the value of the gravel in place or in the hands of respondents after its removal. Therefore, the trial court was not in a position upon the evidence before it to enter any judgment for appellant. Martin v. Grogan-Cochran Lumber Co., Tex.Civ.App., 176 S.W.2d 780.

The evidence in this case is undisputed that respondents entered upon the premises of appellant in good faith in pursuance of the terms of the contract, Exhibit 1, and under the mistaken belief that the Government of the United States owned the land or gravel in question. The entry was openly made and was not arbitrary or malicious. Under such circumstances, and appellant having waived the tort and sued in assumpsit, the measure of appellant's right of recovery would be the reasonable market value of the gravel in place on the premises. See Bolles Wooden Ware Co. v. United States, 106 U.S. 432, 1 S.Ct. 398, 27 L.Ed. 230; Wolfe v. Shell Petroleum Corp., 10 Cir., 83 F.2d 438; The J. Oswald Boyd, D.C., 53 F. Supp. 103; Martin v. Grogan-Cochran Lumber Co., supra; Watkins v. Siler Logging Co., 9 Wash.2d 703, 116 P.2d 315; 89 C.J.S., Trover & Conversion, § 169, p. 647.

Respondents contend under their first affirmative defense that by virtue of the contract, Exhibit 1, they were officers, servants and agents of the Federal Government and as such are relieved from liability and that any recourse of appellant is against the Federal Government. As authority for this position, they cite the following cases: Yearsley v. W. A. Ross Construction Co., 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554; Garrett v. Jones, 200 Okl. 696, 200 P.2d 402; and Moore v. Clark, 235 N.C. 364, 70 S.E.2d 182. These cases lend support to the proposition that an agent or officer of the United States or Government contractor purporting to act on its behalf is liable for his conduct causing injury to another only if he exceeds his authority or if such authority was not validly conferred on him; the remedy in such a case being by suit against the Federal Government in the court of claims.

However, the cases cited by respondents do not appear to be controlling herein. This suit does not involve the *taking* of property for the construction of an airport thereon where the only issue would be the amount of compensation as in a proper condemnation proceeding; or does not involve damages arising incidental to the construction of an airport. This action is primarily to recover damages for the tortious severance and appropriation of appellant's gravel prior to the purchase, seizure or condemnation of appellant's land. Such conversion appears to be the commission of an act beyond the authority conferred upon the Engineers of the War Department and beyond their authority to authorize respondents to commit.

It appears that respondents no longer urge that the judgment in the condemnation proceedings by the Federal Government against such Lot 13 is res adjudicata in this action.

The gravel belonging to appellant was removed from her premises without her knowledge and consent and delivered

to the Federal Government by respondents. She has been permanently deprived of her property without compensation and due process of law. Due to her mistaken theory as to the measure of her damages, the trial court could not render judgment in her favor under the evidence before it. Under all the facts and circumstances in this case including the taking of the gravel under war conditions, we have concluded that the record will support the remanding of this case to the trial court with directions to permit the parties to interplead on the issue of the amount of damages and to offer proof on such issue; and for the trial court to make a finding thereon and to enter judgment for appellant for the amount thereof.

The judgment of the trial court is reversed and the cause remanded for further proceedings in accordance with this opinion. Costs to appellant.

TAYLOR, C. J., and KEETON, ANDERSON and SMITH, JJ., concur.

PORTER, Justice.

Appellant and respondents each filed a petition for rehearing in this cause. Such rehearing was granted and has now been held. The United States was permitted to appear as Amicus Curiae and to file a brief and present oral argument at the rehearing.

We have again examined and considered the questions of law and fact involved in this case. Likewise, we have again considered the propriety of remanding the cause for further pleading and proof on the measure and amount of damages. Appellant, in her petition for rehearing and in her oral presentation at such rehearing, rejected the measure of damages as determined by the Court and persisted in her theory as to the measure of damages. This position of appellant in effect vitiates the purpose for which the cause was ordered remanded and fairly brings appellant under the well recognized rule that generally, an appellant will be held to the theory on which the case is tried in the court below.

We adhere to and adopt the opinion originally filed herein as the opinion of the Court upon the rehearing, save and except that the cause will not be remanded for further pleading and proof. The judgment of the trial court is affirmed. Costs awarded to respondents.

TAYLOR, C. J., and KEETON and SMITH, JJ., concur.

ANDERSON, J., sat at the rehearing, but died before final decision of the cause.