334 F.2d 250
 N. L. and J. L. TERTELING, Co-Partners doing Business Under the Firm Name and Style of J. A. Terteling & Sons, and Successors in Interest to J. W. and N. L. Terteling, Co-Partners doing business under the Firm Name and Style of J. A. Terteling & Sons
v.
The UNITED STATES.
 No. 374-60.
 United States Court of Claims.
 July 17, 1964.
 
 Paul McNulty, Washington, D. C., for plaintiffs. John W. Gaskins, John A. McWhorter, and King & King, Washington, D. C., on the briefs.
 Irving Jaffe, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant. Edna P. Goldberg, Washington, D. C., on the briefs.
 Before JONES, Senior Judge, and WHITAKER, LARAMORE, and DURFEE, Judges.
 LARAMORE, Judge.
 
 
 1
 The plaintiffs are successors in interest to the previous partnership of J. W. and N. L. Terteling (hereinafter referred to as the contractors), which partnership had also been engaged in business under the firm name of J. A. Terteling & Sons. They seek in this action to recover from the government the costs and expenses incurred by the contractors in successfully defending law suits brought against them by third parties, the owners of certain lands in Idaho. These actions were brought against the contractors as a direct consequence of their use of such lands as gravel pit sites in performance of a contract with defendant for the construction of an air base near Mountain Home, Idaho. Said suits were brought against the contractors some three years after the completion of the work under the construction contract and acceptance thereof by the government.
 
 
 2
 Plaintiffs base this claim on an alleged breach of one of the express terms of their government construction contract to furnish the gravel pit sites without cost to the contractor, or, alternatively, on an implied promise under the contract to indemnify them for any expenditures incurred as a proximate consequence of their good faith performance of the work directed by defendant under the terms of the contract.
 
 
 3
 It is defendant's position (1) that any claim against the government under the terms of plaintiffs' contract, express or implied, is barred by the statute of limitations, 28 U.S.C. § 2501; (2) there was no breach of the government's obligations, express or implied, under the contract; and (3) that no promise to indemnify plaintiffs for these litigation expenses can be implied.
 
 
 4
 The case arises on cross-motions for summary judgment, and the following facts are presented:
 
 
 5
 On December 29, 1942, plaintiffs entered into a contract with the government to construct an air base. Under the terms of the contract, the contractors, in consideration of the payment to them of certain prices therein set forth, agreed to furnish all labor, equipment and materials, except such materials as were specified therein to be furnished by defendant, and to perform the work in strict accordance with the specifications, schedules, and drawings which were made a part of the contract.
 
 
 6
 Paragraph SC-5 of the specifications relating to "Order of work," provided:
 
 
 7
 "The work shall be carried on at such places and also in such order of precedence as may be found necessary by the contracting officer. * * *"
 
 
 8
 Paragraph SC-7 of the specifications entitled "Government furnished materials and/or equipment," provided:
 
 
 9
 "The materials and equipment entering into the construction under this contract which are not to be procured by the contractor are as follows for each part of this contract.
 
 
 10
 * * * * * *
 
 
 11
 "(2) Gravel pit site. — The Government will furnish without cost to the contractor, a gravel pit site, which will be designated by the contracting officer, in the S.W. ¼, Sec. 23, T. 3S., R. 6 E.B.M., as provided for in the technical provisions of these specifications." [Emphasis supplied]
 
 
 12
 Section II of the specifications relating to "Production and Stock Piling of Aggregate," contained the following provisions:
 
 
 13
 "2-01. Scope. — The work to be done under this section includes the furnishing of all materials and equipment and performing all labor necessary to furnish, deliver and stockpile the concrete aggregate, for cantonment structures, and screenings in accordance with these specifications and as otherwise directed.
 
 
 14
 "2-02. General. — The Government will furnish without cost to the contractor, gravel pit sites in the following locations:
 
 
 15
 "All of lots 8, 10, 9, 11, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 40, 41, 42, 43, 47, and 48, also part of lots 6, 7, 12, 33, 38, 39, and 44, lying south and west of Oregon Short line railroad right-of-way, the above in section 23, Township 3 south, range 6 east, Boise Meridian.
 
 
 16
 "The contractor may at his option and with the approval of the contracting officer furnish aggregate from other sites. * * * If the contractor elects to utilize quarries and/or gravel pits other than those furnished by the Government he shall acquire the right to take material from the source or sources used and shall bear all expenses involved." [Emphasis supplied]
 
 
 17
 Section III of the specifications entitled "Ballast, Base and Leveling Courses," contained the following pertinent provisions:
 
 
 18
 "3-03.b. Materials. — * * * Ballast course material may be obtained from the gravel pit furnished by the Government * * *.
 
 
 19
 * * * * * *
 
 
 20
 "3-04.b. Materials. — * * * The source of base course material shall be in accordance with the applicable provisions specified for the source of ballast course material as provided in paragraph 3-03.
 
 
 21
 * * * * * *
 
 
 22
 "3-05.b. Materials. — * * * Material for the crushed stone leveling course may be obtained from the gravel pit furnished by the Government. * * *"
 
 
 23
 Section IV of the specifications stated, in part, as follows:
 
 
 24
 "4-05. Aggregate for bituminous mixture. — a. * * * Materials for the aggregate may be obtained from the gravel pit furnished by the Government * * *."
 
 
 25
 Section VI of the specifications relating to "Concrete Pavement," provided in part as follows:
 
 
 26
 "6-05. Aggregate. — Material for the concrete aggregate may be obtained from the gravel pit furnished by the Government * * *."
 
 
 27
 Prior to execution of the contract, defendant had entered certain privately owned tracts of land and staked out areas from which gravel was to be taken. This was without the knowledge and consent of the landowners. The contract was then awarded to plaintiffs in which the defendant agreed to provide these gravel pit sites without cost to the contractors. Thereafter, the government finally condemned the land and paid the landowners for the value of the land. The condemnation proceedings were instituted on May 6, 1943, and the order granting possession of the land to the United States was issued by the United States District Court in Idaho and became effective May 7, 1943. Final decree of condemnation was issued on March 5, 1945.
 
 
 28
 Upon execution of the contract on December 29, 1942, the contractors proceeded with the work and removed large quantities of gravel from the sites designated by the defendant.
 
 
 29
 Following completion of the work and acceptance thereof by the government, some three years later (1946) one of the former owners of the gravel pit sites (Ringele) brought suit against the contractors seeking recovery in the sum of $277,700, plus interest, for the gravel which the contractors had taken from the land. Subsequently, two additional suits were filed against the contractors in the Idaho District Court also seeking recovery for gravel taken from their lands. The first suit was entitled E. J. Wheeler v. Terteling, and the plaintiff sought recovery in the amount of $712,080, plus interest. The second action, entitled Carrie M. Henderson, et al. v. Terteling, sought recovery in the sum of $434,700, plus interest.
 
 
 30
 The contractors notified the government of the suits, requested assistance of the government in defending the suits, and advised the government that they would expect to be reimbursed by the government for any expenses or damages incurred as a result of the necessity of defending the suits.
 
 
 31
 In January of 1954, by stipulation, the litigating parties agreed that action in the Wheeler and Henderson cases would be held in abeyance pending a final determination in the first case filed (Ringele v. Terteling). It was further agreed that if the contractors prevailed in the Ringele case, such decision would control the Wheeler and Henderson cases, and in such event the actions would be dismissed.
 
 
 32
 Upon trial of the issues in the Ringele case, the contractors defended on the ground that they were acting as agents of the United States and that, therefore, no personal liability to the landowners was incurred. The Idaho District Court found for the contractors. On appeal, the Supreme Court of Idaho reversed the District Court, holding that the contractors' action had constituted a conversion and held that the landowners were entitled to recover the reasonable market value of the gravel in place. The cause was ordered remanded for further proceedings as to the amount of damages. Ringele v. Terteling, 78 Idaho 431, 305 P.2d 314 (1956).
 
 
 33
 Both parties petitioned for rehearing in the Idaho Supreme Court, and the United States was permitted to file a brief amicus curiae and to present oral argument upon the rehearing in support of the contractors' position. In its amicus curiae brief, the United States stated that it had a financial interest in the outcome of the pending litigation, since the contract between the United States and the contractors had been validly executed, and the government, therefore, "would seem to be ultimately liable for any judgment" rendered against the contractors.
 
 
 34
 On rehearing the contractors were successful, and the Idaho Supreme Court, on December 20, 1956, reversed its earlier opinion remanding the cause and affirmed the decision of the trial court. Ringele v. Terteling, 78 Idaho 431, 305 P.2d 314, 318 (1956).
 
 
 35
 Subsequently, on April 19, 1957, Dorothy Rorrison Ringele, plaintiff in the Idaho case, filed a petition in the U. S. Supreme Court for a writ of certiorari to the Supreme Court of Idaho. The contractors notified the Department of Justice and the Office of the Chief of Engineers requesting the assistance of those offices. Following its review of the contractors' brief, the Department of Justice advised counsel for the contractors that the government would not file a brief in opposition to the petition but, if a writ was issued, the government would make application for leave to file a brief amicus curiae in support of the contractors. Certiorari was denied by the Supreme Court on June 3, 1957, 353 U.S. 988, 77 S.Ct. 1284, 1 L.Ed.2d 1142. On the basis of the Ringele decision, the contractors were successful in obtaining dismissal of the other two suits. As a result of defending the litigation above outlined, the contractors incurred certain expenses which included attorneys fees, travel, and printing costs, and the expense of accounting services rendered in connection with the defense.
 
 
 36
 Claim was filed with the Comptroller General of the United States which was denied by letter of August 2, 1960. The instant petition was filed September 29, 1960.
 
 
 37
 The threshold question in this case is whether plaintiffs' claim, if any, is barred by our six year statute of limitations, 28 U.S.C. § 2501. Defendant contends that any claim under a contract, such as this, accrues no later than the date of acceptance and final payment in 1943. In support of this contention, defendant argues that since plaintiffs' claim rests on something defendant did or failed to do under the terms of the contract, the breach, if any, would have had to occur during the contract period with the result that the six year statute of limitations would start to run from that date. Defendant further argues that at any rate any claim plaintiffs have is barred except as to costs incurred within the 6-year period preceding the filing of their petition.
 
 
 38
 The full answer to the statute of limitations question, we think, is contained in the statute itself, which provides in pertinent part, as follows:
 
 
 39
 "Every claim of which the Court of Claims has jurisdiction shall be barred unless the petition thereon is filed * * * within six years after such claim first accrues." [Emphasis supplied]
 
 
 40
 The question then is: When did plaintiffs' claim first accrue?
 
 
 41
 Defendant ignores this issue and assumes that the claim accrued upon final acceptance of the work and final payment in 1943. It is too well established to require citation of authority that a claim does not accrue until the claimant has suffered damages. At the time the work was completed and payment made, plaintiffs did not have a claim against the United States, for at that point plaintiffs had not suffered any damages. Plaintiffs' claim in this case did not arise until suit was filed against them in the Idaho Court. It was then and only then that litigation expenses began. Had the expenses concluded at that point, we would say that suit must be filed within six years of that date. See Griffin v. United States, 77 F.Supp. 197, 110 Ct.Cl. 330, 372 (1948). However, it was impossible for the contractors at that time to set up a claim. It was only when the litigation ended that the contractors could determine the total amount of the litigation expenses and the termination of the litigation was not until the Supreme Court denied certiorari in Ringele v. Terteling, 353 U.S. 988, 77 S.Ct. 1284, 1 L.Ed.2d 1142, on June 3, 1957, which was less than six years prior to the filing of the petition herein. To have filed an action sooner would undoubtedly have resulted in a split cause of action. In the past we have held that a claimant will not be allowed to split its cause of action because such a procedure would result in repeated litigation involving the same basic facts. Electric Boat Co. v. United States, 81 Ct.Cl. 361, cert. denied 297 U.S. 710, 56 S.Ct. 573, 80 L.Ed. 997 (1935). These principles were present and affirmed by the Supreme Court in United States v. Dickinson, 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947).
 
 
 42
 The Supreme Court in the Dickinson case stated, at page 749, 67 S.Ct. at page 1385:
 
 
 43
 "* * * the owner is not required to resort either to piecemeal or to premature litigation to ascertain the just compensation for what is really `taken.'"
 
 
 44
 In other words, United States v. Dickinson, supra, teaches us that these contractors had the right to wait until their full obligations were ascertainable before bringing suit therefor. This they did, and in our opinion the instant suit was timely filed.
 
 
 45
 We now turn to the question of defendant's liability, if any. Plaintiffs contend, as stated earlier, that the government breached its obligation under the contract to furnish the gravel pit sites without cost to the plaintiffs. In the alternative, they argue that since they were merely executing the will of defendant as its agents when they removed gravel from the pits furnished by the government, there was an implied promise by defendant to indemnify plaintiffs for any expenses incurred in carrying out defendant's instructions.
 
 
 46
 We are of the opinion that the government breached its contract in this case. The contract expressly stated that the gravel pit sites would be furnished without cost to the contractor. The government argues that it did just that. With this we cannot agree. It did furnish the sites, but it is the manner in which the sites were furnished that brings this action into focus. The government strenuously argues that the law permits a taking by entering the premises and staking out the same. Concededly this is an argumentative question, i. e., whether the staking constituted a taking, or whether payment constituted a passing of title to the United States. However, we are not called upon to answer this question. It was not whether in fact and law a taking occurred, but the manner in which the taking was accomplished that gives rise to this suit. Of course, had the government given the landowners notice of a taking or of an intention to take, or had the order granting possession of the land to the United States become effective on the date the government entered the lands, the ensuing litigation would probably not have resulted between the owners of the land and the contractors. Any suit thereafter would necessarily have been between the landowners and the government. But this is not the manner in which the land was taken. Government agents, probably within their legal rights, entered without knowledge of the owners, staked out the gravel pit sites, and in effect said to the contractors, "here is the site, proceed to dig the gravel and deliver it to the contract site — it will cost you nothing." The contractors did so, relying on the contract that expressly stated that the pit sites would be furnished without cost. It was not without cost! Relying on their title to the land, the owners thereof sued the contractors, and the contractors had to defend in order to avoid a judgment against them. This we think is the critical element of the case. The government belatedly, in its amicus curiae brief in the Idaho Supreme Court, stated that it had a financial interest in the outcome of the suit, and stated further that the United States would seem to be liable for any judgment rendered against the contractors. This was all done after the contractors had advised the government of the suit and after the contractors had notified the government that they would expect reimbursement for any costs incurred as the result of the action. We think the defendant should have defended the suit, especially in the light of its statement that the government would ultimately be liable for any judgment rendered against the contractors. When the government did not defend, and the plaintiffs were forced to defend, we think the government breached its contract to furnish the gravel pit sites without cost to the contractors. The contractors did not agree to dig the gravel and pay the consequent costs thereof, i. e., they did not agree to defend any law suits brought against them as a result of the proper or innocent performance of their contractual duties. Therefore, when the United States contracted to furnish gravel pit sites without cost to the contractors, it not only expressly stated it would be without cost, but impliedly agreed in fact that it would do nothing which would result in any cost to the contractors.[1] In other words, the contract was not limited in any way to exclude reimbursement of the litigation costs involved in this claim.
 
 
 47
 When the government did not defend the Idaho State Court actions, and the contractors did, and as a result were put to extra expense thereby, we believe that the contract was breached, and the government is liable for the resulting litigation expenses. This is specially true in light of the fact that the contract bid was lower because of the government-furnished gravel.
 
 
 48
 Plaintiffs, therefore, as successors in interest to the contractors, are entitled to recover for the costs incurred by the contractors in defending the actions brought against them. Plaintiffs' motion for summary judgment is granted and defendant's cross-motion is denied. Judgment is entered for plaintiffs, with the amount of recovery to be determined pursuant to Rule 47(c) (2) of the Rules of this court.
 
 
 49
 DAVIS, Judge, took no part in the consideration and decision of this case.
 
 
 
 Notes:
 
 
 [1]
 Cf., Manufacturers Aircraft Assn., Inc., v. United States, 77 Ct.Cl. 481, 519 (1933)